IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| CORE WIRELESS LICENSING S.A.R.L. | § § | |
| v. | § § | Case No. 2:14-CV-911-JRG-RSP |
| LG ELECTRONICS INC. ET AL. | § § § | |

## **MEMORANDUM ORDER**

Before the Court is LG Electronics, Inc. and LG Electronics Mobilecomm U.S.A., Inc.'s (collectively, "Defendants") Motion to Transfer Case 2:14-CV-911 to the Northern District of California (Dkt. No. 55, "Motion to Transfer"). In their Motion to Transfer, Defendants argue the Northern District of California is a clearly more convenient forum for this case. (Mot. at 1.) Plaintiff Core Wireless Licensing S.a.r.l. ("Core") opposes transfer. (Opp. at 1.) After considering all of the record evidence and weighing the various factors, the Court finds that Defendants have failed to carry their burden of showing that the Northern District of California is a clearly more convenient venue for this case. Accordingly, Defendants' Motion to Transfer (Dkt. No. 55) is **DENIED**.

## **BACKGROUND AND PROCEDURAL HISTORY**

Core Wireless is a corporation duly organized and existing under the laws of the Grand Duchy of Luxembourg, having a principal place of business at 16, Avenue Pasteur L-2310 Luxembourg. (Dkt. No. 1, "Complaint" at ¶ 1.) Core Wireless has a regular and established place of business and does business relating to the patents-in-suit in connection with its wholly-owned subsidiary, Core Wireless Licensing Ltd., a corporation duly organized and existing under the laws of the State of Texas, having a principal place of business at 5601 Granite Parkway, Suite 1300, Plano, Texas 75024. (*Id*.)

Defendant LG Electronics, Inc. ("LGE") is a foreign corporation organized and existing under the laws of the Republic of Korea with its principal place of business in Seoul, South Korea. (*Id*. at ¶ 2.) Defendant LG Electronics MobileComm U.S.A., Inc. (d/b/a LG Mobile) is a wholly-owned subsidiary of LGE and is a California corporation with its principal place of business in the Southern District of California (not the Northern District) at 10101 Old Grove Road, San Diego, California 92131. (*Id*. at ¶ 3.)

On September 26, 2014, Core filed a complaint against Defendants accusing them of infringing United States Patent Nos. 8,713,476; 8,498,671; 8,434,020; 7,072,667; and 5,907,823. (*Id*. at ¶¶ 8–12.) On February 3, 2015, Defendants moved to consolidate the instant matter with co-pending Marshall Division matter *2:14-cv-00912-JRG-RSP*[1] and two co-pending Tyler Division matters involving Defendant Apple, Inc. ("Apple")[2] due to the significant overlap in asserted patents among these four matters. (*See* Dkt. No. 35) (seeking consolidation on a common patent basis). In addition to these three co-pending cases, on March 9, 2015, Marshall Division District Judge Rodney Gilstrap presided over a related patent litigation matter between Core and Apple. (*6:12-cv-00100-JRG-JDL*) ("*Apple I*"). Tyler Division Magistrate Judge Love handled the pretrial matters in *Apple I* and is presently presiding over pretrial matters in *Apple II* and *Apple III* except as to all matters relating to claim construction. (*See* Dkt. No. 115) (ordering

---

[1] On December 17, 2014, the Court consolidated matter *2:14-cv-00912-JRG-RSP* ("*LG II*") with the instant matter and referred all pretrial activities to Magistrate Judge Roy Payne. (Dkt. No. 13.)

[2] The other co-pending matters in this District are matters *6:12-cv-00751-JRG*-JDL ("*Apple II*") and 6*:12-cv-00752-JRG-JDL* ("*Apple III*"). Marshall Division District Judge Rodney Gilstrap presides over the instant matter, *LG2*, and the *Apple II* and *Apple III* matters Defendants sought to have consolidated with it.

all claim construction matters to be consolidated under Marshall Division Magistrate Judge Roy Payne in a consolidated process involving the instant matter, *LG II*, *Apple II*, and *Apple III*).

Because the overlap of the previous and these currently co-pending matters is significant, reproduced below is Defendants' summary of the asserted patents for each of these related, co-pending cases within the Eastern District of Texas. (Mot. at 3.)

| CASE | ASSERTED PATENTS | OVERLAP |
|---|---|---|
| *Apple I* (6:12-cv-100) | Alleged to be "standards-essential" | All patents that reached trial overlap with *LG II* |
| *Apple II* (6:14-cv-751) | Not alleged to be "standards-essential" | 5 of 6 patents overlap with *LG I* |
| *Apple III* (6:14-cv-752) | Alleged to be "standards-essential" | All patents overlap with *LG II* |
| *LG I* (2:14-cv-911)[3] | Not alleged to be "standards-essential" | All patents overlap with *Apple II* |
| *LG II* (2:14-cv-912) | Alleged to be "standards-essential" | Of the 13 patents asserted in this case, 5 were recently tried in *Apple I*, and 6 are at issue in *Apple III* |

Despite previously seeking intra-divisional consolidations of various co-pending matters involving identical or similar patents-in-suit, on April 20, 2015—nearly seven months after the filing of Core's Complaint—Defendants moved the Court pursuant to 28 U.S.C. § 1404(a) to transfer this action to the United States District Court for the Northern District of California. (Dkt. No. 55.)[4] For the following reasons, Defendants' Motion to Transfer is **DENIED**.

## APPLICABLE LAW

Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division

---

[3] Instant matter.

[4] At the same time, Defendants have moved to disturb this Court's consolidation—and frustrate their own previous efforts for an intra-divisional consolidation of two other co-pending matters, by seeking a transfer to the *Southern* District of California in consolidated *LG2* matter *2:14-cv-00912-JRG-RSP*. (Dkt. No. 56.)

where it might have been brought." 28 U.S.C. § 1404(a) (2006). The first inquiry when analyzing a case's eligibility for 1404(a) transfer is "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*In re Volkswagen I*").

Once that threshold is met, courts analyze both public and private factors relating to the convenience of parties and witnesses as well as the interests of particular venues in hearing the case. *See Humble Oil & Ref. Co. v. Bell Marine Serv., Inc.*, 321 F.2d 53, 56 (5th Cir. 1963); *In re Nintendo Co., Ltd.*, 589 F.3d 1194, 1198 (Fed. Cir. 2009); *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2009). The private factors are: 1) the relative ease of access to sources of proof; 2) the availability of compulsory process to secure the attendance of witnesses; 3) the cost of attendance for willing witnesses; and 4) all other practical problems that make trial of a case easy, expeditious, and inexpensive. *In re Volkswagen I*, 371 F.3d at 203; *In re Nintendo*, 589 F.3d at 1198; *In re TS Tech*, 551 F.3d at 1319. The public factors are: 1) the administrative difficulties flowing from court congestion; 2) the local interest in having localized interests decided at home; 3) the familiarity of the forum with the law that will govern the case; and 4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law. *In re Volkswagen I*, 371 F.3d at 203; *In re Nintendo*, 589 F.3d at 1198; *In re TS Tech*, 551 F.3d at 1319.

The plaintiff's choice of venue is not a factor in this analysis. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 314–15 (5th Cir. 2008) ("*In re Volkswagen II*"). Rather, the plaintiff's choice of venue contributes to the defendant's burden in proving that the transferee venue is "clearly more convenient" than the transferor venue. *In re Volkswagen II*, 545 F.3d at 315; *In re Nintendo*, 589 F.3d at 1200; *In re TS Tech*, 551 F.3d at 1319. Furthermore, though the private

and public factors apply to most transfer cases, "they are not necessarily exhaustive or exclusive," and no single factor is dispositive. *In re Volkswagen II*, 545 F.3d at 314–15.

Timely motions to transfer venue "should [be given] a top priority in the handling of [a case]," and "are to be decided based on 'the situation which existed when suit was instituted.'" *In re Horseshoe Entm't*, 337 F.3d 429, 433 (5th Cir. 2003); *In re EMC Corp.*, Dkt. 2013-M142, 2013 WL 324154 (Fed. Cir. Jan. 29, 2013) (quoting *Hoffman v. Blaski*, 363 U.S. 335, 443 (1960)).

## DISCUSSION

### A. Proper Venue

Neither party appears to dispute that venue is proper either in the Eastern District of Texas or the Northern District of California as to Core or Defendants.

### B. Private Interest Factors

#### 1. Cost of Attendance for Willing Witnesses

"The convenience of the witnesses is probably the single most important factor in a transfer analysis." *In re Genentech, Inc.*, 566 F.3d 1388, 1342 (Fed. Cir. 2009). While the Court must consider the convenience of both the party and non-party witnesses, it is the convenience of non-party witnesses that is the more important factor and is accorded greater weight in a transfer of venue analysis. *Aquatic Amusement Assoc., Ltd. v. Walt Disney World Co.*, 734 F.Supp. 54, 57 (N.D.N.Y. 1990); *see also* Wright & Miller, *Federal Practice and Procedure* § 3851. "A district court should assess the relevance and materiality of the information the witness may provide." *In re Genentech, Inc.*, 566 at 1343. However, there is no requirement that the movant identify "key witnesses," or show "that the potential witness has more than relevant and material information . . . ." *Id.* at 1343–44.

Defendants' motion sets forth a series of statements—with very little, if any, supporting evidence—arguing that this prong weighs in favor of transfer. (Mot. at 6–9.) For example, Defendants argue the employees of third parties Google, Audience, and Qualcomm are "***likely*** to be essential third party witnesses." (*Id*. at 6.) (emphasis added). Defendants continue making similar speculative statements about where these witnesses may reside. (*See, e.g., id*. at 7) ("Audience witnesses almost certainly reside in or near their employers' headquarters . . . "); (*id*.) ("To the extent a Qualcomm employee is a necessary witness in LG 1, it is highly likely that such a witness also resides in California."). Such statements are both speculative and unsubstantiated with evidence and, thus, are accorded little weight.

Although Defendants provide some evidence in support of transfer, none of it is particularly compelling. For example, Defendants provide some evidence as to where the development of the Android operating system began. (*See* Dkt. No. 55-1, Exh. A, "Finn Decl." at ¶ 6) ("Similarly, it is well known in the mobile industry that the development of the Android operating system began in Palo Alto in 2003, and was acquired by Google in 20005."). Moreover, Defendants identify eleven inventors and four prior art assignees by name that reside in the Northern District of California. (Reply at 2) (citing Dkt. No. 67-1, Exh. E, "Finn Decl. II" at ¶ 13). Defendants, however, fail to explain why these fifteen individuals—among the presumably hundreds of other inventors and assignees of prior art related to this case—are of particular importance to Defendants aside from the fact that they are located within their desired venue.

Defendants additionally cite the relative distances third parties would have to travel for trial in the Northern District of California as compared to this District. (Mot. at 7.) Again, Defendants cite generically to employees of Google, Audience, and Qualcomm (if even

necessary, as Defendants note) without any explanation as to the identity of these individuals, and their importance to the case.

For its part, Core identifies two of its own witnesses located in this District. (Opp. at 10) (identifying Messrs. Johnson and Kim). Core additionally identifies several prosecuting attorneys that "appear to reside on the east coast" (*Id.* at 10–11.) Core's arguments suffer similar deficiencies as Defendants' arguments and neither is particularly compelling. For example, the above witnesses Core identified are not third-party witnesses, but rather party witness. Typically, these witnesses are accorded less weight than non-party witness. The third-party witnesses Core identifies are not located in either the transferee or transferor district.

On the whole, neither side sets forth particularly compelling evidence for the Court to meaningfully evaluate and balance this factor.[5] Nevertheless, because Defendants have identified entities residing in the Northern District of California that could plausibly be witnesses in this case, this factor weighs in favor of transfer. However, recognizing this factor evaluates the cost of attendance for *willing* witnesses, the Court finds little evidence supporting which particular witnesses are both willing and relevant to Defendants' case. Accordingly, the Court find this factor only weigh slightly in Defendants' favor.

Accordingly, the Court finds that this factor weighs slightly in favor of transfer.

2. **Relative Ease of Access to Sources of Proof**

"In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in

---

[5] In fact, some of the arguments under this factor bear no relevance whatsoever on the Court's evaluation. For example, under the "Cost of Attendance for Willing Witnesses" heading in their reply, Defendants argue—quite perplexingly—that certain third-party witnesses are subject to the process from the Northern District Court of California. (Reply at 2.) The Court strains to comprehend how this can be relevant to a *willing* witness.

favor of transfer to that location." *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009) (citation omitted).

Under this factor, Defendants argue "[t]he greatest volume of relevant documents and information will *likely* come from Google, Audience and Qualcomm. (Mot. at 9) (emphasis added). Moreover, Defendants state "[t]he bulk of LG's document production is *likely* to come from Korea and California." (*Id*.) (emphasis added). Again, these statements are highly speculative and unsubstantiated by evidence. Regarding the Korean documentation, however, Defendants appear to concede without reservation, that most of their relevant documentation is not even located within the United States. (*See id*. at 1) ("Most of the relevant discovery in LG's possession is located in Korea.").

In their reply, Defendants offer more definitive statements regarding the location of witnesses, but those witnesses are only identified in a generic sense and are unsupported by evidence in the briefing. (Reply at 3.) Further in their reply, Defendants offer evidence by way of the Finn declaration regarding the inspection of source code. (Finn Decl. II at ¶ 15). That evidence, however, suggests that the inspection of source will occur neither in this District, nor the Northern District of California. (*See id*.) (suggesting the inspection will be conducted in Chicago Illinois). None of this is particularly compelling evidence in support of transfer.

Core argues that it has a substantial number of relevant documents in the Eastern District of Texas in the possession of its U.S. subsidiary, Core Wireless Texas. (Opp. at 8.) Defendants do not appear to dispute that the vast majority of Core's relevant documentation is located in this District. (Mot. at 9). Rather, Defendants challenge Core's underlying motives for the relevant documentation existing in this District. (*See id*.) ("Though Core Wireless will claim to have

relevant patent prosecution files in this District, they are only here because Core Wireless transplanted them here form Europe and/or Canada solely for purposes of litigation.").

The Court has evaluated Core's evidence and concludes that it has no reason to doubt Core's claims of a substantial and legitimate business presence in the Eastern District of Texas.[6] (*See, e.g.*, Dkt. No. 64-2, Exh. B, "Burt Decl." at ¶¶ 2–5) ("Conversant Texas [a wholly owned subsidiary of the parent company to Core] first opened an office in Plano, in February 2011. In July 2014, Conversant Texas moved to new office space in Plano and moved all of its employees to the new office space."); (*id.*) ("Conversant Texas' office is located at 5601 Granite Parkway, Suite 1300, Plano, Texas 75024, and this is Conversant's principal place of business in the United States."); (*id.* at ¶¶ 2–4, 6) ("Core Wireless Texas [a wholly owned subsidiary of Core] shares office space with Conversant Texas, so the Plano office also is Core Wireless' principal place of business in the United States."); (*id.* at ¶ 8) ("Since November 2009, Conversant has regularly employed Doo Seon Shin, a patent licensing engineer who works in Plano and lives in Allen, Texas. Mr. Shin has maintained a house and a family in Texas throughout his employment with Conversant . . . ."); (*id.* at ¶ 9) ("Today Conversant Texas has 10 employees who all work in Plano and live in the surrounding area."); (*id.* at ¶ 11) ("Conversant IP [the parent company to Core] decided to open an office in Plano, Texas, in 2011 because it provided strategic advantages for its business."); (*id.* at ¶ 14) ("Core Wireless Texas maintains records and information relevant to the patents-in-suit in Plano. It also maintains records and information relevant to the larger global Core Wireless patent portfolio in Plano.")

---

[6] Conversely, the Court further concludes that Defendants have failed to provide evidence to support their allegations that Core purposefully transplanted documents to manufacture venue. Indeed, with the benefit of Core's evidence marshaled in its response, Defendants themselves appear to now concede that it would be reasonable for the Court to conclude that this factor is at least neutral. (*See* Reply at 5) ("At worst, this factor is neutral.").

In summary, although Defendants have established—through attorney argument—that some relevant third-party documentation is likely located in the Northern District of California, their remaining relevant documentation to be offered is located in Korea. In contrast, Core has convincingly shown through evidence that the vast majority of its documents are located within this District. Accordingly, evaluated as a whole, the Court finds this factor weighs against transfer.

### 3. Availability of Compulsory Process to Secure the Attendance of Witnesses

Under Federal Rule of Civil Procedure 45 (as recently amended), this Court may enforce a subpoena issued to any nonparty witness in the State of Texas to appear at trial, provided the party does not incur substantial expense. Fed. R. Civ. P. 45(c)(1)(B). Similarly, the Court may enforce any subpoena for a deposition to be taken within its boundaries, provided that the deposition is taken no more than 100 miles from a location where the witness resides, is employed, or regularly transacts business in person. *See id.* at (a)(2), (c)(1)(A), (d)(3)(a). Moreover, party witnesses do not require compulsory process for trial and are not given much weight in this factor. Rather, the focus of this factor is on witnesses for whom compulsory process to attend trial might be necessary.

Under this heading, Defendants essentially recite the same generic, unsubstantiated references to Google, Audience and Qualcomm witnesses that the Northern District of California might compel. (Mot. at 9–10.) In their reply, although Defendants cite evidence of particular individuals located in the Northern District of California, those individuals identified are the fifteen inventors of prior art Defendants previously cited without explanation as to why these fifteen individuals would be particularly more important to them at trial as compared to the presumably hundreds of other similar witnesses located outside the Northern District of California. (Reply at 4) (citing Finn Decl. II at ¶¶ 13–14). Without further explanation as to their

particular relevance to Defendants at trial, the Court has very little evidence to meaningfully evaluate importance of these witnesses. Accordingly, these witnesses are accorded very little weight.

Core's arguments suffer the same deficiencies as Defendants' under this heading. For example, in its sur-reply, Core makes passing reference to three potential witnesses currently residing in Texas—and within the subpoena power of this Court—who were identified by Defendants on their Rule 26 disclosures. (Sur-reply at 3.) Core neither identifies these individuals, nor provides any evidence or explanation as to their relevance. However, given that Defendants disclosed these individuals as being relevant in their Initial Disclosures, the Court must recognize their potential importance in this case.

Accordingly, on the whole, the Court finds this factor to weigh slightly against transfer.

### 4. All Other Practical Problems that Make Trial of a Case Easy, Expeditious, and Inexpensive

Defendants argue this factor is neutral. (*See* Mot. at 10) ("There are no practical problems with transferring this case because this case is just beginning.") Core disagrees and argues that a strong judicial economy argument supports its desire to allow the case to proceed in the Eastern District of Texas. (Opp. at 11–12.) For example, Core notes that District Judge Rodney Gilstrap is familiar with the technology at issue due to his involvement as presiding judge in the *Apple I* trial. (*Id*. at 11.) Moreover, Core points out that five of the asserted patents in the matter (*LG II*) consolidated with the instant matter are identical to the patents-in-suit in the *Apple I* matter. (*Id*.) Core further points to the judicial inefficiencies resulting from transfer by removing this and the consolidated matter (*LG II*) from the District that recently tried a case with no fewer than five of the exact same patents asserted in this consolidated group of cases. (*Id* at 12.) Finally, Core cites evidence illustrating that the median time to trial is approximately ten months shorter in the

Eastern District of Texas than in the Northern District of California which it concludes weighs against transfer as well. (Dkt. No. 64-5, Exh. E at 2–3.)

In their reply, Defendants assail Core for purportedly taking positions in this case it now contradicts. (*See* Reply at 4) (referencing Core's opposition to Defendants' motion to consolidate with the *Apple I*, *Apple II*, and *Apple III* cases). Upon reviewing of the parties' briefing, the Court observes similar inconsistencies in Defendants' position. For example, Defendants pepper references to the *Apple I* case throughout their own briefing ostensibly with the intent to marginalize the importance of the witnesses Core identified to be relevant in the transfer analysis. (*See, e.g.*, Mot. at 5) ("Core Wireless did not call any of its own employees as witnesses in the recent *Apple 1* trial."); (*id*. at 7) ("Though Core Wireless claims a 'regular and established place of business' in Plano, Texas (Compl., ¶ 1), it did not call *any* of its employees as witnesses in the recent *Apple 1* trial.") (emphasis in original); (*id*. at 10) ("Not a single Core Wireless employee is on Core Wireless' 'will call' witness list in *Apple 1*."); (Reply at 2) ("Indeed, at least some Qualcomm employees were specifically identified and testified (by deposition) in the *Apple I* trial, including NDCA-based Nate Chizgi."); (*id*.) ("Three additional Qualcomm employees that testified in the *Apple I* trial, are likely to have relevant information in this case . . . .").

Yet now, under the judicial economy prong, Defendants take the position that *Apple I* is not relevant to the transfer analysis whatsoever. Indeed, they take this position even after they sought to be consolidated with other co-pending cases in this District. (Dkt. No. 35.) Defendants cannot have it both ways. If Defendants believe—as their briefing suggests—that the *Apple I* case bears strong relevance to the instant matter, judicial economy supports a finding for keeping the case in the Eastern District so that the same presiding judge, technical advisor, etcetera, can

leverage the intuitional knowledge gained from *Apple I* in quickly and efficiently resolving the parties' dispute in the instant matter.

These inconsistences notwithstanding, upon consideration of the parties' positions, the Court finds this factor weighs against transfer for the following reasons.

More than two months before Defendants filed the instant motion, the parties filed a motion for entry of a Docket Control Order ("Proposed DCO"). (Dkt. No. 37.) Although several dates on the Proposed DCO were disputed at that time, the Court ultimately entered a Docket Control Order with dates that comport with the Court's dates proposed months before Defendants filed their Motion to Transfer. (*Compare* Dkt. No. 37 *with* Dkt. No. 105) (ordering the entry of the dates originally proposed by the Court).[7] Defendants have offered no explanation for waiting nearly seven months to file their Motion to Transfer even though several critical dates had already passed, with others rapidly approaching. (*See, e.g.*, Dkt. No. 105) (ordering invalidity contentions due, production of source code, and an exchange of proposed claim terms under P.R. 4-1 prior to the filing of Defendants' Motion to Transfer); (*id.*) (requiring the parties to complete claim construction discovery two months after the filing of their Motion to Transfer). Clearly, both this and the related consolidated matter were well on their way to the March 14, 2016 trial setting when Defendants filed their motion.

Even the Defendants concede that there are important efficiencies to be gained from this Court's past work involving these patents. For example, although the Court typically will not take into consideration those activities that occurred in a matter subsequent to the filing of a

---

[7] A few dates were adjusted slightly to accommodate the parties' concerns with the originally proposed dates. Nevertheless, the DCO entered maintained the originally proposed dates of nearly every major milestone in a patent matter—e.g., trial date, claim construction hearing, claim construction discovery deadline, exchange of claim construction terms, expert reports, discovery deadlines, and the like.

motion to transfer, the Court finds Defendants' June 8, 2015 motion to adopt claim construction (Dkt. No. 75, "Motion to Adopt") highly instructive here.[8] In their Motion to Adopt, Defendants agree that transferring the instant matter would be highly inefficient. (*See, e.g., id*. at 1) ("Core should not be permitted to re-litigate claim construction positions that were previously decided and used by this Court or previously agreed to by Core. Doing so is inefficient, as it wastes the Court's and the parties' time and effort."). This, too, weighs strongly against transfer.

In summary, the Court cannot overstate the judicial efficiencies lost at this stage were it to act as Defendants request and splinter this and the consolidated matter (*LG II*) into two cases to be tried by two different California District Courts. (*See* Dkt. No. 56) (moving the Court to transfer the related, consolidated matter to the Southern District of California).

Accordingly, for the foregoing reasons, the Court concludes that this factor weighs heavily against transfer.

**C.     Public Interest Factors**

  **1.     Local Interest in Having Localized Interests Decided at Home**

Defendants argue the Northern District of California has a local interest in this case because, among other things, ". . . [certain third parties' products] are at the heart of Core Wireless' infringement claims." (Mot. at 10.) Defendants further argue that California has a strong local interest in this case because third parties Google, Audience, and Qualcomm are "all based in California, and the individuals who developed those products reside there." (*Id*.)

---

[8] The Federal Circuit has permitted district courts to consider such post-filing activities for the sake of judicial economy. *See, e.g.*, *In re EMC Corp.*, 501 Fed. Appx. 973, 976 (Fed. Cir. 2013) ("[A] district court's experience with a patent in prior litigation and the copendency of cases involving the same patent are permissible considerations in ruling on a motion to transfer venue."). Here, Defendants' Motion to Adopt evidences their recognition of the efficiencies to be gained from this Court's maintenance of this and the consolidated matter.

Regarding this first point, to the extent Defendants' position is staked upon a connection not to "the events that gave rise to this suit," as suggested by *In re Volkswagen II*, but rather a connection of some residents and third-party entities "based in California," financial or otherwise, to Defendants themselves, the Court notes that this raises troubling fairness implications and affords it little weight. 545 F.3d at 318. Indeed, Defendants expressly concede that their alleged infringing products are sold on a worldwide basis. (Opp. at 13); (*see also* Mot. at 13) ("The allegedly infringing devices are 'sold throughout the United States . . . .'") (citations omitted).

In contrast, Core has demonstrated, through evidence, that it has a strong local interest in the Eastern District of Texas. For example, Core performs patent prosecution, portfolio maintenance, engineering analysis, due diligence activities, patent acquisition support, and licensing support in Plano, Texas. (Burt Decl. at ¶ 9.) Moreover, Mr. Doo Seon Shin—a patent engineer of Core residing in Plano, Texas—was involved in the pre-suit licensing negotiations with Defendants before Core filed suit. (*Id.* at ¶ 8.) These activities occurred in the Eastern District of Texas and squarely involve "events that gave rise to this suit." These facts weigh against transfer.

Although Defendants concede that Core has employees residing in this District (Mot. at 10), they attempt to marginalize the importance of these employees through unsubstantiated attorney argument by suggesting that Core's presence in the District is merely intended to manipulate venue. (*See id.*) ("[Core's employees] exist solely because of Core Wireless' plan to haul companies into court in the Eastern District of Texas.") Moreover, Defendants attempt to minimize the effect of their own employees and distribution center located in Fort Worth, Texas,

approximately fifty miles[9] from Core Wireless' principal place of business (Plano, Texas) located within Eastern District.

After reviewing the parties' arguments and evidence, the Court concludes Core has demonstrated that it has a substantial and legitimate business presence in the Eastern District of Texas for the reasons set forth under Heading B.2, above. (*See* pp. 5–7, *supra*) (evaluating the evidence Core presented to demonstrate its presence in this District). Balancing Defendants' nationwide sales activities against Core's District presence and its business activities within it, the Court concludes this factor does not support transfer.

Accordingly, evaluated as a whole, the Court finds this factor to be neutral.

### 2. Administrative Difficulties Flowing From Court Congestion

Defendants argue this factor is neutral. (*See* Mot. at 11) ("The Northern District of California tends to resolve cases in nearly identical time . . . ."). Core, however, cites evidence to counter Defendants' attorney argument that the median time to trial in the Eastern District of Texas is nearly ten months shorter than that of the Northern District of California. (Dkt. No. 64-5, Exh. E at 2–3.) Indeed, the Court observes that after Defendants waited nearly seven months to file their Motion to Transfer, both the instant and co-pending (*2:14-cv-00912*) cases were scheduled for trial in less than eleven months. (Dkt. No. 126.) Accordingly, this factor weighs against transfer.

---

[9] As measured between the center point of these two cities.

### 3. Familiarity of the Forum With the Law that Will Govern the Case and Avoidance of Unnecessary Problems of Conflict of Laws or in the Application of Foreign Law

Defendants concede that the remaining two public interest factors are neutral. (Mot. at 11.) Core contends these two factors are neutral as well. (Opp. at 13.) The Court agrees and finds these factors to be neutral to the transfer analysis.

### CONCLUSION

A motion to transfer venue should only be granted upon a showing that the transferee venue is "clearly more convenient" than the venue chosen by the plaintiff. *In re Nintendo Co.*, 589 F.3d at 1197; *In re Genentech, Inc.*, 566 F.3d at 1342 (Fed. Cir. 2009). After weighing the evidence as a whole, the Court finds that this is not such a situation. On balance, Defendants have fallen far short of meeting their burden to show that the Northern District of California would be a clearly more convenient forum than the Eastern District of Texas. Accordingly, Defendants' Motion to Transfer Venue (Dkt. No. 55) is **DENIED**.

**SIGNED this 31st day of August, 2015.**

ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE