# EXHIBIT H-1

# Joint Proposed Final Jury Instructions (-911 Case)

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| CORE WIRELESS LICENSING S.A.R.L., <br><br>        Plaintiff, <br><br>   vs. <br><br> LG ELECTRONICS, INC. & LG ELECTRONICS MOBILECOMM U.S.A., INC., <br><br>        Defendants. | Case No. 2:14-cv-911-JRG-RSP <br><br><br> **JURY TRIAL DEMANDED** |

**JOINT PROPOSED JURY INSTRUCTIONS[1]**

---

[1] The parties are submitting joint proposals for both the '911 case and the '912 case. LG is also submitting a single set of proposed instructions for the entire case. LG contends that the '911 and '912 cases should be tried together.

## I.      INTRODUCTION (AGREED)[2]

Members of the Jury:

You have now heard the evidence in this case. I will now instruct you on the law that you must apply to that evidence. It is your duty to follow the law as I give it to you. However, as I have said previously, you the jury are the judges of the facts. Do not consider any statement that I have made during the trial or make in these instructions as an indication that I have any opinion about the facts of this case.

After I give you these instructions, the attorneys will make their closing arguments. Statements and arguments of the attorneys are not evidence and are not instructions on the law. They are intended only to assist you in recalling and understanding the evidence and the parties' contentions.

A verdict form has been prepared for you. You will take this form to the jury room and when you have reached unanimous agreement as to your verdict, you will have your foreperson fill in the blanks in that form, date it and sign it. Answer each question in the verdict form from the facts as you find them. Do not decide who you think should win and then answer the questions to reach that result. Your answers and your verdict must be unanimous.

## II.     CONSIDERING WITNESS TESTIMONY (AGREED)[3]

In determining whether any fact has been proved in this case, you may, unless otherwise instructed, consider the testimony of all witness, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced or introduced them.

---

[2] *Core Wireless Licensing S.a.r.l. v. Apple Inc.*, Case No. 6:12-cv-100 (E.D. Tex.) (Dkt. No. 428); *DDR Holdings, LLC v. Digital River, Inc.*, Case No. 2:06-CV-42-JRG (E.D. Tex.), (Dkt. No. 519); *SSL Services, LLC v. Citrix Systems, Inc.*, Case No. 2:08-CV-158-JRG (E.D. Tex.) (Dkt. No. 256).
[3] *Core Wireless Licensing S.a.r.l. v. Apple Inc.*, Case No. 6:12-cv-100 (E.D. Tex.) (Dkt. No. 428);

You, the jurors, are the sole judges of the credibility of all witnesses and the weight and effect of all evidence. By the Court allowing testimony or other evidence to be introduced over the objection of an attorney, the Court did not indicate any opinion as to the weight or effect of such evidence.

Attorneys representing clients in Courts such as this one have an obligation in the course of trial to assert objections when they believe testimony or evidence is being offered that is contrary to the rules of evidence. When the Court sustained an objection to a question addressed to a witness, you must disregard the question entirely, and may draw no inference from its wording or speculate about what the witness would have said if he or she had been permitted to answer. If the objection was overruled, then you may treat the answer to that question just as you would treat the answer to any other question.

At times during the trial it was necessary for the Court to talk with the lawyers here at the bench out of your hearing, or by calling a recess and talking to them when you were out of the courtroom. This happened because often during a trial, something comes up that does not involve the jury. You should not speculate on what was said during such discussions that took place outside of your presence.

## III.   DIRECT AND CIRCUMSTANTIAL EVIDENCE (AGREED)[4]

There are two types of evidence that you may consider in properly finding the truth as to the facts in this case. One is direct evidence such as testimony of an eyewitness. The other is indirect or circumstantial evidence that is, the proof of a chain of circumstances that indicates the

---

*DDR Holdings, LLC v. Digital River, Inc.*, Case No. 2:06-CV-42-JRG (E.D. Tex.), (Dkt. No. 519); *SSL Services, LLC v. Citrix Systems, Inc.*, Case No. 2:08-CV-158-JRG (E.D. Tex.) (Dkt. No. 256).
[4] *Core Wireless Licensing S.a.r.l. v. Apple Inc.*, Case No. 6:12-cv-100 (E.D. Tex.) (Dkt. No. 428); *DDR Holdings, LLC v. Digital River, Inc.*, Case No. 2:06-CV-42-JRG (E.D. Tex.), (Dkt. No. 519); *SSL Services, LLC v. Citrix Systems, Inc.*, Case No. 2:08-CV-158-JRG (E.D. Tex.) (Dkt. No. 256).

existence or nonexistence of certain other facts. As a general rule, the law makes no distinction between direct or circumstantial evidence, but simply requires that you find the facts based on the evidence presented, both direct and circumstantial. The parties have stipulated, or agreed, to some facts in this case. When the lawyers on both sides stipulate to the existence of a fact, you must, unless otherwise instructed, accept the stipulation as evidence, and regard the fact as proved.

## IV.  HOW TO EXAMINE THE EVIDENCE (AGREED)[5]

Certain testimony in this case has been presented to you through depositions. A deposition is the sworn, recorded answers to questions asked to a witness in advance of the trial. Under some circumstances, if a witness cannot be present to testify in person from the witness stand, the witness's testimony may be presented, under oath, in the form of a deposition. Before this trial, attorneys representing the parties in this case questioned these deposition witnesses under oath. A court reporter was present and recorded the testimony. Deposition testimony is entitled to the same consideration as testimony given by a witness in person from the witness stand. Accordingly, you should determine the credibility and importance of deposition testimony, to the best of your ability, just as if the witness had testified in court in person.

While you should consider only the evidence in this case, you are permitted to draw such reasonable inferences from the testimony and exhibits as you feel are justified in the light of common experience. In other words, you may make deductions and reach conclusions that reason and common sense lead you to draw from the facts that have been established by the testimony and evidence in the case.

---

[5] *Core Wireless Licensing S.a.r.l. v. Apple Inc.*, Case No. 6:12-cv-100 (E.D. Tex.) (Dkt. No. 428); *DDR Holdings, LLC v. Digital River, Inc.*, Case No. 2:06-CV-42-JRG (E.D. Tex.), (Dkt. No. 519); *SSL Services, LLC v. Citrix Systems, Inc.*, Case No. 2:08-CV-158-JRG (E.D. Tex.) (Dkt. No. 256).

Unless I instruct you otherwise, you may properly determine that the testimony of a single witness may be sufficient to prove any fact, even if a greater number of witnesses may have testified to the contrary, if after considering all the other evidence, you believe that single witness.

## V.     EXPERT WITNESS (AGREED)[6]

When knowledge of technical subject matters may be helpful to the jury, a person who has special training or experience in that technical field—called an "expert witness"—is permitted to state his or her opinion on those technical matters. However, you are not required to accept that opinion. As with any other witness, it is solely up to you to decide whether to rely upon it or not.

## VI.    BURDENS OF PROOF (AGREED)

In any legal action, facts must be proved by a required amount of evidence known as the "burden of proof." The burden of proof in this case is on Core Wireless for some issues and on LG for other issues.

The Plaintiff, Core Wireless, has the burden of proving patent infringement by a preponderance of the evidence. The Plaintiff, Core Wireless, also has the burden of proving damages for patent infringement by a preponderance of the evidence. A preponderance of the evidence means evidence that persuades you that a claim is more probably true than not true. Sometimes this is talked about as being the greater weight and degree of credible testimony.

The LG Defendants have the burden of proving patent invalidity by clear and convincing evidence. Clear and convincing evidence means evidence that produces in your mind an abiding conviction that the truth of the party's factual contentions are highly probable. Although proof to an absolute certainty is not required, the clear and convincing evidence standard requires a greater

---

[6] *Core Wireless Licensing S.a.r.l. v. Apple Inc.*, Case No. 6:12-cv-100 (E.D. Tex.) (Dkt. No. 428); *DDR Holdings, LLC v. Digital River, Inc.*, Case No. 2:06-CV-42-JRG (E.D. Tex.), (Dkt. No. 519); *SSL Services, LLC v. Citrix Systems, Inc.*, Case No. 2:08-CV-158-JRG (E.D. Tex.) (Dkt. No. 256).

degree of persuasion than is necessary for the preponderance of the evidence standard. If proof establishes in your mind an abiding conviction in the truth of the matter, then the clear and convincing standard has been met.

In determining whether any fact has been proved by the preponderance of the evidence or by clear and convincing evidence, you may, unless otherwise instructed, consider the stipulations, the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them.

**VII.     THE PARTIES AND THEIR CONTENTIONS**

As I did at the start of the case, I will first give you a summary of each side's contentions in this case. I'll then provide you with detailed instructions on what each side must prove to win on each of its contentions.

As I previously advised you, this case concerns United States patents:

- Patent No. 8,713,476, referred to as the '4-7-6 or '476 patent;

- Patent No. 8,498,671, referred to as the '6-7-1 or '671 patent;

- Patent No. 8,434,020, referred to as the '0-2-0 patent or the '020 patent;

- [Patent No. 7,072,667, referred to as the '6-6-7 patent or the '667 patent;

- Patent No. 5,907,823, referred to as the '8-2-3 patent or the '823 patent;][7]

I will collectively refer to these patents as the "patents-in-suit" or as the "asserted patents."

---

[7] Core Wireless contends that the bracketed and underlined patents are no longer part of this case due to its filing a Notice of Withdrawal of the patents with this Court. Core Wireless has submitted a pending Motion for Leave to File First Amended Complaints (Dkt 292) to remove the bracketed patents, has ceased litigating the patents, and has represented to LG that it will not try the patents at trial. LG contends that Core Wireless's Notice of Withdrawal was ineffective and that the bracketed patents are currently part of this case.  In addition, the bracketed patents are the subject of a pending motion to dismiss with prejudice (Dkt. No. 284).

The Plaintiff, Core Wireless, seeks money damages from the Defendant, LG, for allegedly infringing the patents-in-suit by making, using, selling,  offering for sale, or importing into the United States certain mobile phones and tablets.

Core Wireless contends that LG made, used, offered to sell, or sold within the United States or imported into the United States products that infringe one or more of only the following claims:

- U.S. Patent No. 8,713,476: Claims 1, 8, 9, 20, 29

- U.S. Patent No. 8,498,671: Claims 1, 4, 5, 8, 11

- U.S. Patent No. 8,434,020: Claims 1, 2, 8, 11, 13

- [U.S. Patent No. 7,072,667: Claims 12, 13

- U.S. Patent No. 5,907,823: Claims 1, 2, 3, 20][8]

All of these claims are sometimes referred to as the "asserted claims." Core Wireless has accused certain LG mobile phones and tablets of infringing the asserted claims. Collectively, these products are referred to as the "LG Accused Products."

Core Wireless also contends that LG is actively inducing their customers and/or end-users to directly infringe certain ones of the asserted claims of the Patents-in-Suit.

Core Wireless is seeking damages for the alleged infringement by LG.

LG denies that it has infringed any asserted claim of the asserted patents. LG contends that during the term of these patents LG did not make, use, sell, offer for sale, or import any products and/or systems that infringe any of the asserted claims of the asserted patents. LG also denies that it is actively inducing its customers and end-users to directly infringe any of the asserted claims of the asserted patents.

---

[8] *See supra* text at note 7.

Separately, LG also contends that the asserted claims of Core Wireless's patents are invalid. LG contends that all of the asserted claims of all of the asserted patents are anticipated and rendered obvious by prior art that existed before Core Wireless's alleged invention and therefore all of the asserted claims of all of the asserted patents are invalid. LG further contends that all of the asserted claims of all of the asserted patents are obvious in view of prior art that existed before Core Wireless's alleged inventions and therefore that Core Wireless's asserted patent claims are invalid. Invalidity is a defense to infringement.

Invalidity and infringement are separate and distinct issues that must be separately decided by you, the jury. Your job is to decide whether the asserted claims of the asserted patents have been infringed and whether any of the asserted claims of those patents are invalid. If you decide that any claim of a patent has been infringed and that claim is not invalid, you will then need to decide any money damages to be awarded to Core Wireless as compensation for the infringement.

## VIII.   CLAIM INTERPRETATION (AGREED)[9]

Before you can decide many of the issues in this case, you will need to understand the role of patent "claims." The patent claims are the numbered sentences at the end of each patent. The claims are important because it is the words of the claims themselves that define what a patent covers. The figures and text in the rest of the patent provide a description and/or examples of the invention and provide a context for the claims, but it is the claims that define the breadth of the patent's coverage. Each claim is effectively treated as if it were a separate patent, and each claim may cover more or less than another claim. Therefore, what a patent covers collectively depends on what each of its claims covers.

---

[9] Core Wireless Licensing S.a.r.l. v. Apple Inc., Case No. 6:12-cv-100 (E.D. Tex.) (Dkt. No. 428); DDR Holdings, LLC v. Digital River, Inc., Case No. 2:06-CV-42-JRG (E.D. Tex.), (Dkt. No. 519); SSL Services, LLC v. Citrix Systems, Inc., Case No. 2:08-CV-158-JRG (E.D. Tex.), (Dkt. No. 256).

Claims may describe apparatuses, devices, or products, such as machines. I will call such claims "apparatus" claims. Claims may also describe processes or methods for making or using a product. I will call such claims "method" claims. In this case, Core Wireless has asserted both apparatus claims and method claims.

You need first to understand what each claim covers in order to decide whether or not there is infringement of the claim and to decide whether or not the claim is invalid. The law says that it is my role to define the terms of the claims, and it is your role to apply my definitions to the issues that you are asked to decide in this case. Therefore, as I explained to you at the start of the case, I have determined the meaning of the claims, and I have provided to you my definitions of certain claim terms. These are in your juror notebooks. You must accept my definitions of these words in the claims as being correct. It is your job to take these definitions that I have supplied and apply them to the issues that you are asked to decide, including the issues of infringement and invalidity. For claim limitations that I have not construed—that is, interpreted or defined—you  are to use the plain and ordinary meaning of the limitation as understood by one of ordinary skill in the art, which is to say, in the field of technology of the patent. The meaning of the words of the patents claims must be the same when deciding both infringement and validity.

You have been provided with copies of the patents-in-suit and copies of the claim term definitions in your juror notebooks, and you may use them in your deliberations. Rather than take the time to read each definition out loud at this time, I'll again point you to the claim term definitions in your juror notebooks.

## IX.    WHAT A CLAIM COVERS (AGREED)[10]

---

[10] *Core Wireless Licensing S.a.r.l. v. Apple Inc.*, Case No. 6:12-cv-100 (E.D. Tex.) (Dkt. No. 428); *DDR Holdings, LLC v. Digital River, Inc.*, Case No. 2:06-CV-42-JRG (E.D. Tex.), (Dkt. No. 519); *SSL Services, LLC v. Citrix Systems, Inc.*, Case No. 2:08-CV-158-JRG (E.D. Tex.), (Dkt. No. 256).

I will now explain how a claim defines what it covers.

A claim sets forth, in words, a set of requirements. Each claim sets forth its requirements in a single sentence. If a device or method satisfies each of these requirements in that sentence, then it is covered by and infringes the claim.

There can be several claims in a patent. A claim may be narrower or broader than another claim by setting forth more or fewer requirements. The coverage of a patent is assessed on a claim-by-claim basis. In patent law, the requirements of a claim are often referred to as the "claim elements" or "claim limitations." When a product meets all of the requirements of a claim, the claim is said to "cover" that product, and that product is said to "fall" within the scope of that claim. In other words, a claim covers a product where each of the claim elements or limitations is present in that product. If a product is missing even one limitation or element of a claim, the product is not covered by the claim. If the product is not covered by the claim, that product does not infringe that claim.

## X.    INDEPENDENT AND DEPENDENT CLAIMS

This case involves two types of patent claims: independent and dependent claims. An independent claim does not refer to any other claim of the patent. An independent claim sets forth all the requirements that must be met in order to be covered by that claim. It is not necessary to look at any other claim to determine what an independent claim covers.

In this case, claims 1 and 20 of the '476 patent, claim 1 of the '671 patent, claim 1 of the '020 patent [, claims 12 and 13 of the '667 patent, and claims 1 and 20 of the '823 patent][11] are independent claims.

_____

[11] *See supra* text at note 7.

The rest of the claims being asserted in this case are dependent claims. A dependent claim does not itself recite all of the requirements of the claim, but refers to one or more other claims (at least one of which is an independent claim) for some of its requirements. In this way, the claim depends on another claim. The law considers a dependent claim to incorporate all of the requirements of the claims to which it refers. The dependent claim then adds its own additional requirements.

To determine what a dependent claim covers, it's necessary to look at both the dependent claim and any other claims to which it refers. A product that meets all of the requirements of both the dependent claim and all of the requirements of all of the other claims to which it refers is covered by that dependent claim.

## XI.     OPEN-ENDED OR "COMPRISING" CLAIMS (AGREED)[12]

The beginning portion, or preamble, of a claim often uses the word "comprising." The word "comprising," when used in the preamble, means "including but not limited to" or "containing but not limited to." When "comprising" is used in the preamble, if you decide that an accused product includes all of the requirements of that claim, the claim is infringed. This is true even if the accused instrumentality contains additional elements.

For example, a claim to a table comprising a tabletop, legs, and glue would be infringed by a table that includes a tabletop, legs, and glue, even if the table also includes wheels on the table's legs.

## XII.    MEANS-PLUS-FUNCTION CLAIMS (LG PROPOSAL)[13]

Certain elements of certain claims are in a special form called a "means-plus-function" format. These elements require a special interpretation. Those words do not cover all means that

---

[12] *Core Wireless Licensing S.a.r.l. v. Apple Inc.*, Case No. 6:12-cv-100 (E.D. Tex.) (Dkt. No. 428).
[13] *See supra* text at note 7.

perform the recited functions but cover only the described structures in the patent specification and drawings that perform the functions, or an equivalent of those structures. Claim 20 of the '823 patent includes means-plus-function elements.

The table in Tab 1 of your Juror Notebook lists the recited functions, and structures in the patent specification that performs those functions, as interpreted by the Court. You must use my interpretation of the means-plus-function elements in your deliberations regarding infringement and validity, as further discussed below.

## XIII.   INFRINGEMENT GENERALLY

A patent owner has the right to stop others from using the invention covered by its patent claims in the United States during the life of the patent. If any person makes, uses, sells or offers to sell within the United States or imports into the United States what is covered by the patent claims without the patent owner's permission, that person is said to infringe the patent.

In reaching your decision on infringement, keep in mind that only the claims of a patent can be infringed. You must compare the asserted patent claims, as I have defined each of them, to the accused products, and determine whether or not there is infringement. You should not compare the accused products with any specific example set out in the patent or with the patent holder's commercial products or with the prior art in reaching your decision on infringement. The only correct comparison is with the language of the claim itself, as I have explained its meaning to you.

You must reach your decision as to each assertion of infringement based on my instructions about the meaning and scope of the claims, the legal requirements for infringement, and the evidence presented to you by the parties. Also, the issue of infringement is assessed on a claim-by-claim basis. Therefore, there may be infringement as to one claim but no infringement as to another claim in a patent. However, if you find that an independent claim is not infringed, you must also find that all claims that depend from that claim are also not infringed.

In this case, there are two possible ways that a claim may be infringed. I will explain the requirements for each of these types of infringement to you. The two types of infringement are called: (1) direct infringement; and (2) indirect infringement.

I will now explain each of the types of infringement in more detail.

## XIV.   DIRECT INFRINGEMENT (AGREED)[14]

In order to prove direct infringement of a patent claim, Core Wireless must show by a preponderance of the evidence that the accused product includes each and every requirement or limitation of the claim. In determining whether an accused product directly infringes a patent claim in this case, you must compare the accused product with each and every one of the requirements or limitations of that claim to determine whether the accused product contains each and every requirement or limitation recited in the claim. A claim requirement is present if it exists in an accused product just as it is described in the claim language, either as I have explained the language to you or, if I did not explain it, as it would be understood by one of skill in the art. If an accused product omits any requirement recited in a claim, including any limitation of an independent claim from which an asserted claim depends, then you must find that that particular product does not infringe that claim.

A patent can be directly infringed even if the alleged infringer did not have knowledge of the patent and without the infringer knowing that what it was doing is infringement of the claim. A patent may also be directly infringed even though the accused infringer believes in good faith that what it is doing is not an infringement of the patent.

## XV.   INFRINGEMENT - MULTIPLE ALLEGED INFRINGERS (LG PROPOSAL)[15]

---

[14] *Core Wireless Licensing S.a.r.l. v. Apple Inc.*, Case No. 6:12-cv-100 (E.D. Tex.) (Dkt. No. 428).
[15] *Id.*; *see also Akamai Techs., Inc. v. Limelight Networks, Inc.*, 797 F.3d 1020, 1022 (Fed. Cir. 2015) ("We will hold an entity responsible for others' performance of method steps in two sets of circumstances: (1) where that entity directs or controls others' performance, and (2) where the actors form a joint enterprise.").

Direct infringement requires that a party perform every step of a claimed method. Where no single party does so, but multiple parties combine to do so, the claim is directly infringed if and only if LG has control over all the multiple parties, such that all the infringing acts are attributable solely to LG. Mere arms-length cooperation between parties is insufficient to prove direct infringement. Rather, the accused infringer must control or direct the actions of third parties if those actions are to be attributed to the accused infringer.

Where LG does not itself perform every step of the claimed method, Core Wireless must prove by a preponderance of the evidence (1) that all the steps of the claimed process were performed in the United States and (2) that LG controls or directs third parties to perform the steps not performed by LG.

## XVI.   INFRINGEMENT OF MEANS-PLUS-FUNCTION CLAIM ELEMENTS (LG PROPOSAL)[16]

The Court has instructed you that several claims contain means-plus-function elements. To show infringement, Core Wireless must prove that it is more likely than not that the structures in each LG Accused Product that Plaintiff alleges perform the functions listed in the table in Tab 1 are identical to, or equivalent to, the structures described in the specification for performing the identical function. Those structures from the specification are also listed in the table at Tab 1.

In deciding whether Core Wireless has proven that a LG Accused Product includes structures covered by a means-plus-function requirement, you must first decide whether the LG Accused Product has any structures that perform the functions listed in the table at Tab 1 of your Juror Notebook. If not, the claim containing that specific means-plus-function requirement is not infringed.

---

[16] *Core Wireless Licensing S.a.r.l. v. Apple Inc.*, Case No. 6:12-cv-100 (E.D. Tex.) (Dkt. No. 428); *see supra* text at note 7.

If you find that the LG Accused Product performs the claimed functions, you must next identify the structures in the LG Accused Product that performs these functions. After identifying those structures you must then determine whether Core Wireless has shown that those structures are either identical to, or equivalent to structures of the means-plus-function limitations, which the Court determined as part of the claim construction and are listed in the table at Tab 1 of your Juror Notebook. If the structures in each LG Accused Product is the same or equivalent to the structures I identified, the LG Accused Product meets the requirements of that limitation.

Whether the structures of the LG Accused Product are equivalent to structures described in the patent specification is decided from the perspective of a person of ordinary skill in the art. If a person of ordinary skill in the art would consider the differences between the structures found in the LG Accused Product and structures described in the patent specification to be insubstantial, the structures are equivalent.

## XVII. APPARATUS CLAIMS THAT RECITE CAPACITY (CORE WIRELESS PROPOSAL)[17]

Core Wireless alleges that all of the asserted claims of the '020 and '671 patents, as well as claims 1, 8, and 9 of the '476 patent recite the capability to perform a function.

To infringe a claim that recites the capability to perform a function, an apparatus needs only to have the recited capability to perform that function. Actually showing the performance of the function is unnecessary, and evidence that the apparatus is reasonably capable of satisfying the claim limitation is sufficient to find the limitation is met, even though it may also be capable of non-infringing modes of operation. Language claiming capability includes "Adapted to," "Configured to," and "means for."

_____

[17] LG objects and contends that no instruction is appropriate as to capacity.

- 14 -

## XVIII. DOCTRINE OF EQUIVALENTS (CORE WIRELESS PROPOSAL)[18]

With respect to certain claim limitations in each of the asserted claims of the '020, '476, and '671 patents, Core Wireless contends LG's accused products infringe either literally or under a legal theory called the Doctrine of Equivalents. I will now instruct you on the doctrine of equivalents to use in assessing direct infringement for these issues.  For your deliberations on all other infringement issues, you should consider only literal infringement.

If you decide that an accused product or method does not literally infringe an asserted patent claim, you must then decide whether it is more probable than not that such product or method infringes the asserted claim under what is called the "doctrine of equivalents." Under the doctrine of equivalents, the product or method can infringe an asserted patent claim if it includes parts or steps that are equivalent to those requirements of the claim that are not literally present in the product or method. If the product or method is missing an equivalent part or step to even one part or step of the asserted patent claim, the product or method cannot infringe the claim under the doctrine of equivalents. Thus, in making your decision under the doctrine of equivalents, you must look at each individual requirement of the asserted patent claim and decide whether the product or

---

[18] LG objects and contends that no instruction is appropriate for the doctrine of equivalents. LG contends that Core has only generic expert opinions under the doctrine of equivalents and, therefore, Core cannot present any particularized testimony and linking argument as to the insubstantiality of the differences between the claims and the accused devices, or with respect to the function, way, and result test. *See Mirror Worlds, LLC v. Apple, Inc.*, 784 F.Supp.2d 703, 716 (E.D. Tex. 2011).  LG further contends that an instruction on the doctrine of equivalents would be confusing to the jury unless Core specifically identifies which elements of which claims are asserted to be infringed under the doctrine of equivalents, and the alleged equivalents of those elements.  *See Core Wireless Licensing S.a.r.l. v. Apple Inc.*, Case No. 6:12-cv-100 (E.D. Tex.) (Dkt. No. 428).  Core Wireless disputes LG's characterization, and notes that the infringement report of Dr. Kenneth Zeger identifies several claim limitations that may be satisfied through the doctrine of equivalents, including with specific analysis of the insubstantiality of the differences and the function, way, and result test.

method has an equivalent part or step to that individual claim requirements that are not literally present in the product or method.

A part or step of a product or method is equivalent to a requirement of an asserted claim if a person of ordinary skill in the field would think that the differences between the part or step and the requirement were not substantial as of the time of the alleged infringement. One way to decide whether any difference between a requirement of an asserted claim and a part or step of the product or method is not substantial is to consider whether, as of the time of the alleged infringement, the part or step of the product or method performed substantially the same function, in substantially the same way, to achieve substantially the same result as the requirement in the patent claim.

In deciding whether any difference between a claim requirement and the product or method is not substantial, you may consider whether, at the time of the alleged infringement, persons of ordinary skill in the field would have known of the interchangeability of the part or step with the claimed requirement. The known interchangeability between the claim requirement and the part or step of the product or method is not necessary to find infringement under the doctrine of equivalents. Further, the same element or method step of the accused product or method may satisfy more than one element of a claim.

## XIX.   INDUCEMENT (AGREED)

In addition to alleging direct infringement of the asserted patent claims, Core Wireless, alleges that LG induces infringement of its asserted patent claims. The act of encouraging or inducing others to infringe a patent is called inducing infringement.

Core Wireless alleges that LG is liable for infringement by actively inducing another party or parties to directly infringe its patents.

As with direct infringement, you must determine whether there has been active inducement on a claim-by-claim basis.

LG is liable for active inducement of a claim only if Core Wireless proves by a preponderance of the evidence that:

1.  the acts are actually carried out by LG's customers using the accused products, where those acts directly infringe that claim;

2.  LG took action during the time the patent was in force intending to cause the infringing acts by LG's customers using the accused products; and

3.  LG was aware of or willfully blind to the existence of the asserted claims and knew that the acts, if taken, would constitute infringement of the asserted claims or that LG was willfully blind to that infringement.

To prove willful blindness, Core Wireless must prove by a preponderance of the evidence that there was a high probability that a reasonable basis for an accusation of infringement of an asserted claim existed and that LG took deliberate acts to avoid learning of that fact.

In order to establish active inducement of infringement, it's not sufficient that the other party or parties themselves directly infringe the claim, nor is it sufficient that LG was aware of the acts by its customers using the accused products that allegedly constitute the direct infringement. Rather, you must find that LG knew of the asserted claims and specifically intended its customers to use the accused products to infringe the asserted claims, or that LG believed there was a high probability that its customers would infringe the patent, but deliberately avoided learning the infringing nature of its customers' acts.  Evidence of a good faith belief of noninfringement of a patent can be evidence that LG lacks the required intent for induced infringement.[19]

## XX.   INVALIDITY - GENERALLY

---

[19] *Personalized Media Commc'ns v. Zynga, Inc.*, No. 2:12-cv-68 (E.D. Tex.) (Dkt. 264 at 15-16).

I'll now instruct you on the rules that you must follow in deciding whether or not LG has proven that the asserted claims of the patents-in-suit are invalid.

An issued patent is accorded a presumption of validity based on the presumption that the United States Patent and Trademark Office, which you've often heard referred to simply as the PTO, acted correctly in issuing the patent. This presumption of validity extends to all issued patents, including those that claim the benefit of an earlier filed patent application, such as so-called "continuations" or "continuations-in-part."

To prove that any claim of a patent is invalid, LG must persuade you by clear and convincing evidence that the claim is invalid. Like infringement, validity is determined on a claim-by-claim basis. You must determine separately for each claim whether that claim is invalid. If one claim of a patent is invalid, this does not mean that any other claim is necessarily invalid. Claims are construed the same way for determining infringement as for determining invalidity.

In evaluating the prior art to determine whether an invalidity defense has been proved by clear and convincing evidence, you must consider whether that prior art is materially new, that is, different from the prior art considered by the Patent Office.  Prior art differing from the prior art considered by the Patent Office may, but does not always, carry more weight than the prior art that was considered by the Patent Office.[20]

---

[20] *Microsoft Corp. v. i4i Ltd. Partnership*, 131 S.Ct. 2238, 2251 (2011) ("[N]ew evidence supporting an invalidity defense may carry more weight in an infringement action than evidence previously considered by the PTO. . . . [A] jury instruction on the effect of new evidence can, and when requested, most often should be given. . . . When it is disputed whether the evidence presented to the jury differs from that evaluated by the PTO, the jury may be instructed to consider that question. In either case, the jury may be instructed to evaluate whether the evidence before it is materially new, and if so, to consider that fact when determining whether an invalidity defense has been proved by clear and convincing evidence."); *DDR Holdings, LLC v. Digital River, Inc.*, Case No. 2:06-CV-42-JRG (E.D. Tex.) (Dkt. 519 at 16) ("You must consider whether that evidence is materially new, and if so, consider that fact when determining whether an invalidity

LG has challenged the validity of the asserted claims on a number of grounds. In making your determination as to invalidity, you should consider each claim separately.

### A.      Invalidity: Anticipation

LG contends that all of the asserted claims of the patents-in-suit are invalid for being anticipated by prior art. LG bears the burden of establishing anticipation by clear and convincing evidence.

A patent claim is invalid if it is not new. For a claim to be invalid because it is not new, all of its requirements must have existed in a single device or method that predates the patent, or must have been described in a single previous publication or patent that predates the patent. In patent law, a previous device, publication or patent that predated the claimed invention is called a "prior art reference." If a patent claim is not new we say it is "anticipated" by a prior art reference. Anticipation requires that a single reference not only disclose all elements of the claim [within the four corners of the document][21], but that it must also disclose those elements arranged or combined in the same way as in the claim as that claim has been construed, or interpreted, by the Court.[22] LG must prove with clear and convincing evidence that an asserted patent claim was anticipated by the prior art reference.

In determining whether or not the invention is valid, you must determine the scope and content of the prior art at the time the invention was made. For prior art to anticipate a claim of a

---

defense has been proven by clear and convincing evidence. Prior art differing from the prior art considered by the Patent Office may, but does not always, carry more weight than the prior art that was considered by the Patent Office.").

[21] LG objects to the inclusion of the bracketed phrase, as a prior art reference need not be a document.

[22] *Net MoneyIN, Inc. v. VeriSign, Inc.*, 545 F.3d 1359, 1371 (Fed. Cir. 2008) ("We thus hold that unless a reference disclosed within the four corners of the document not only all of the limitations claimed but also all of the limitations arranged or combined in the same way as recited in the claim, it cannot be said to prove prior invention of the thing claimed and, thus, cannot anticipate under 35 U.S.C. § 102.").

patent, the disclosure in the prior art reference does not have to be in the same words as the claim, but all of the elements of the claim must be there, either stated or necessarily implied, so that someone of ordinary skill in the field of the invention looking at that one reference would be able to make and use at least one embodiment of the claimed invention. Anticipation can also occur when the claimed invention inherently and necessarily results from practice of what is disclosed in the written reference, even if the inherent disclosure was unrecognized or unappreciated by one of ordinary skill in the field of the invention.

If you find that a patent claim is not new as explained above, you should find that claim invalid.

### B.      Invalidity: Obviousness

LG also contends that all asserted claims of the patents-in-suit are invalid as obvious. Even though an invention may not have been identically disclosed or described in a single prior art reference before it was made by an inventor, the invention may have been obvious to a person of ordinary skill in the field of technology of the patent at the time the invention was made. LG bears the burden of establishing obviousness by clear and convincing evidence.

In determining whether a claimed invention is obvious, you, the jury, must consider the level of ordinary skill in the field of technology of the patent that someone would have had at the time the claimed invention was made, the scope and content of the prior art, any differences between the prior art and the claimed invention, as well as the ordinary knowledge of the person of ordinary skill at the time of the invention.

The skill of the actual inventor is irrelevant because inventors may possess something that distinguishes them from workers of ordinary skill in the art. Keep in mind that the existence of

each and every element of the claimed invention in the prior art does not necessarily prove obviousness. Most, if not all inventions, rely on building blocks of prior art.

In considering whether a claimed invention is obvious, you should consider whether, as of the priority date of the patents-in-suit, there was a reason that would have prompted a person of ordinary skill in the field to combine the known elements in a way that the claimed invention does, taking into account such facts as:

1.  Whether the claimed invention was merely the predictable result of using prior art elements according to their known function;

2.  Whether the claimed invention provides an obvious solution to a known problem in the relevant field;

3.  Whether the prior art teaches or suggests the desirability of combining elements in the claimed inventions;

4.  Whether the prior art teaches away from combining elements in the claimed invention;

5.  Whether it would have been obvious to try the combination of elements, such as when there is a design need or market pressure to solve a problem, and there are a finite number of identified, predictable solutions; and

6.  Whether the change resulted more from design incentives or other market forces. In determining whether the claimed invention was obvious, consider each claim separately.

Consider only what was known at the time of the invention.

[In making these assessments, Ladies and Gentlemen, you should take into account any objective evidence (sometimes called "secondary considerations") that may have existed at the time of the invention, and afterwards, may shed light on non-obviousness, such as:

1. Whether the invention was commercially successful as a result of the merits of the claimed inventions (rather than the result of design needs or market pressure, advertising, or similar activities);

2. Whether the invention satisfied a long-felt need;

3. Whether others had tried and failed to make the invention;

4. Whether others copied the invention, understanding that there is no contention in this case that LG copied the patented technology;

5. Whether there were changes or related technologies or market needs contemporaneous with the invention;

6. Whether the invention achieved unexpected results;

7. Whether others in the field praised the invention;

8. Whether persons having ordinary skill in the art of the invention expressed surprise or disbelief regarding the invention;

9. Whether others sought or obtained rights to the patent from the patent-holder; and

10. Whether the inventor proceeded contrary to accepted wisdom in the field.][23]

In support of obviousness, you may also consider whether others independently invented the claimed invention before or at about the same time as the named inventor thought of it. If you

---

[23] LG objects to the inclusion of the bracketed instruction on secondary considerations on the grounds that Core Wireless has not identified sufficient evidence of secondary considerations, so the instruction is unnecessary and would be confusing to the jury. Core Wireless disputes LG's contention that it has not identified evidence of secondary considerations, and at least certain evidence of secondary considerations is subject to a pending motion in *limine*.

find that LG has proved obviousness by clear and convincing evidence, then you must find that
that claim is invalid.

## XXI.   LEVEL OF ORDINARY SKILL IN THE ART (AGREED)

Several times in my instructions I have referred to a person of ordinary skill in the field of
the invention. It is up to you to decide the level of ordinary skill in the field of the invention. You
should consider all of the evidence introduced at trial in making this decision, including:

1.   the levels of education and experience of persons working in the field;

2.   the types of problems encountered in the field; and

3.   the sophistication of the technology.

A "person of ordinary skill in the art" is a hypothetical person who is presumed to have
known of all of the relevant prior art at the time of the claimed invention.

## XXII.  PATENT INFRINGEMENT DAMAGES

### A.       Introduction (AGREED)

If you find that LG has infringed any valid claim of Core Wireless's patents-in-suit, you
must then consider what amount of damages to award to Core Wireless. I'll now instruct you about
the measure of damages. By instructing you on damages, I'm not suggesting which party should
win this case on any issue.

The damages you award must be adequate to compensate Core Wireless for any
infringement you may find. You must not award Core Wireless more damages than are adequate
to compensate for the infringement, nor should you include any additional amount for the purpose
of punishing LG or setting an example. Core Wireless has the burden to establish the amount of
its damages by a preponderance of the evidence. The patent owner is not entitled to damages that
are remote or speculative.

Core Wireless seeks damages in the form of a reasonable royalty. A reasonable royalty is defined as the money amount Core Wireless and LG would have agreed upon as a fee for LG's use of Core Wireless's invention at the time the infringement began.

The determination of a damage award is not an exact science, and the amount need not be proven with unerring precision. You may approximate, if necessary, the amount to which the patent owner is entitled.

Damages may not be determined by mere speculation or guess.  It may be proper to award a damages amount if the evidence shows the extent of the damages as a matter of just and reasonable inference.

I'll give more detailed instructions regarding damages shortly. Note, however, that under the patent laws, if infringement of a patent not determined to be invalid is found, Core Wireless is entitled to recover no less than a reasonable royalty for each infringing sale or use of its inventions. A royalty is a payment to a patent holder in exchange for the right to make, use, sell, or import the claimed invention. A reasonable royalty is the amount of money to be paid for a license to make, use, or sell the invention that a willing patent owner and a willing prospective licensee would have agreed to immediately before the infringement began as the part of hypothetical negotiation.

In considering this hypothetical negotiation, you should focus on what the expectations of the patent-holder and the infringer would have been had they entered into an agreement at that time and had they acted reasonably in their negotiations. In determining this, you must assume that both parties believed the patent was valid and infringed and the patent-holder and infringer were willing to enter into an agreement.

The reasonable royalty you determine must be a royalty that would have resulted from this hypothetical negotiation and not simply a royalty either party would have preferred. A reasonable

royalty may be a lump sum amount for past and future infringement. Evidence of things that happened after the infringement first began may be considered in evaluating the reasonable royalty only to the extent that the evidence aids in assessing what royalty would have resulted from a hypothetical negotiation.

### B.    Patent Damages - Burden of Proof (AGREED)

Where the parties dispute a matter concerning damages for infringement, it is Core Wireless's burden to prove that it is more probable than not that Core Wireless's version is correct. Core Wireless must prove the amount of damages with reasonable certainty, but need not prove the amount of damages with mathematical precision. Core Wireless is not entitled to damages that are remote or speculative.

### C.    When Patent Infringement Damages Begin (CORE WIRELESS PROPOSAL)[24] [25]

Damages that Core Wireless may be awarded by you commence on the date that LG has both infringed and been notified of the patents.  Because Core Wireless does not sell a product covered by the patents, damages begin without the requirement for actual notice in the following way:

---

[24] *See, e.g.*, *Wine Ry. Appliance Co. v. Enter. Ry. Equip. Co.*, 297 U.S. 387, 396–97 (1936); *Texas Digital Sys., Inc. v. Telegenix, Inc.*, 308 F.3d 1193, 1219–20 (Fed. Cir. 2002); *Inline Connection Corp. v. AOL Time Warner Inc.*, 465 F. Supp. 2d 312, 317 n.12 (D. Del. 2006); *Tulip Computers Int'l B.V. v. Dell Computer Corp.*, No. CIV.A.00-981-KAJ, 2003 WL 1606081, at *12–*16 (D. Del. Feb. 4, 2003) report and recommendation adopted, No. CIV.A. 00-981-KAJ, 2003 WL 21011157 (D. Del. May 1, 2003); The Federal Circuit Bar Ass'n Model Patent Jury Inst. at § 6.8 (Feb. 2013); Model Patent Jury Instructions for the Northern District of California at § 5.8 (July 16, 2015)

[25] LG objects to Core Wireless's proposed instruction because it misstates the law.  Core Wireless has granted licenses under the asserted patents to Nokia, Microsoft and Intel, giving Core Wireless an affirmative obligation to provide notice under 35 U.S.C. § 287(a).  *See K&K Jump Start/Chargers, Inc. v. Schumacher Elec. Corp.*, 52 Fed. Appx. 135, 141 (Fed. Cir. 2002) ("A patentee's licensees also must mark products.").

If the patents were granted before the infringing activity began, damages should be calculated as of the date you determine that the infringement began; or

If the patents were granted after the infringing activity began as determined by you, damages should be calculated as of the dates the patents issued.

### C.     When Patent Infringement Damages Begin (LG PROPOSAL)[26]

If you find that the asserted patents are both infringed and not invalid, you must award damages to compensate for any such infringement.

The amount of damages Core Wireless can recover for patent infringement is limited to those acts of infringement that occurred after LG received actual notice that it infringed.[27] Actual notice means that the Core Wireless asserted to LG a specific charge of infringement of each of the patents by a specific accused product or device.

### D.     Georgia-Pacific Approach (AGREED)

In determining the reasonable royalty, you should consider all the facts known and available to the parties at the time the infringement began. Some of the kinds of factors that you should consider in making your determination are:

1.   The royalties received by the patentee for licensing of the patents-in-suit proving or tending to prove an established royalty;

2.   The rates paid by the licensee for the use of other patents comparable to the patents-in-suit;

---

[26] Adapted from *Core Wireless Licensing S.a.r.l. v. Apple, Inc.*, Case. No. 6:12-cv-100 (E.D. Tex.) (Dkt. No. 428).
[27] *See ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*, 694 F.3d 1312, 1334 (Fed. Cir. 2012) ("[I]f a single patent contains both apparatus claims and method claims, the marking requirement applies to all the claims.").

3. The nature and scope of the license as exclusive or non-exclusive or as restricted or non-restricted in terms of territory or with respect to the parties to whom the manufactured products may be sold;

4. Whether the patent owner had an established policy of granting licenses or retaining the patented invention as its exclusive right or whether the patent owner had a policy of granting licenses under special conditions designed to preserve its monopoly;

5. The nature of the commercial relationship between the patent owner and the licensee, such as whether they are competitors or whether their relationship was that of an inventor and a promoter;

6. The effect of selling the patented specialty in promoting sales of other products of the licensee, the existing value of the invention to the licensor as a generator of sales of his nonpatented items, and the extent of such derivative or convoyed sales;

7. The duration of the patent and the term of the license;

8. The established profitability of the product made under patents, its commercial success, and its current popularity.

9. The utility and advantages of the patented invention over the old modes or devices, if any, that had been used for achieving similar results;

10. The nature of the patented invention, the character of the commercial embodiment of it as owned and produced by the licensor, and the benefits to those who have used the invention;

11. The extent to which the infringer has made use of the invention and any evidence probative of the value of that use;

12. The portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions;

13. The portion of the realizable profits that should be credited to the invention as distinguished from non-patented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer;

14. The opinion and testimony of qualified experts; and

15. The amount that a licensor (such as the patentee) and a licensee (such as the infringer) would have agreed upon at the time the infringement began if both sides had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable to a prudent patentee who was willing to grant a license.

No one factor is dispositive, Ladies and Gentlemen, and you can and you should consider the evidence that's been presented to you in this case on each of these factors.

You may also consider any other factors which in your minds would have increased or decreased the royalty the infringer would have been willing to pay and the patent owner would have been willing to accept, acting as normally prudent business people.

### E.  Apportionment (AGREED)

Damages should be apportioned to the value contributed by the invention; that is, Core Wireless must apportion the damages caused by the portion of the accused products that are the

patented features or components and profits attributable to the unpatented features and components of the accused products.

### F.    Smallest Salable Unit (LG PROPOSAL)

In the case of multi-component products, like smartphones and tablet computers, where demand for the entire product is not attributable to the patented feature, you may not base the royalty on the price or revenues of the entire product, but instead must use a more realistic starting point for the royalty calculation, often, the smallest saleable unit and, at times, even less.

### G.    Calculating Royalties (CORE WIRELESS PROPOSAL)

[Core Wireless contends an instruction on this topic is unnecessary. If the Court is inclined to issue such an instruction, it should be as follows:]

There are two ways to calculate a royalty. One way to calculate a royalty is to determine a one-time lump sum payment that the infringer would have paid at the time of the hypothetical negotiation for a license covering all sales of the licensed product up until the first day of trial, March 14, 2016. Another way to calculate a royalty is to determine an ongoing, or "running," royalty where a royalty rate is applied against future sales as they occur. When a running royalty is paid, the patent owner collects on-going, payments over a period of time. It is up to you, based on the evidence, to decide what type of royalty (if any) is appropriate in this case.

### H.    Calculating Royalties (LG PROPOSAL)[28]

One way to calculate a royalty is to determine a one-time lump sum payment that the infringer would have paid at the time of the hypothetical negotiation for a license covering all sales of the licensed product, both past and future. This differs from payment of an ongoing royalty where a royalty rate is applied against future sales as they occur. When a one-time lump sum is

---

[28] *Core Wireless Licensing S.a.r.l. v. Apple, Inc.*, Case. No. 6:12-cv-100 (E.D. Tex.) (Dkt. No. 428).

paid, the infringer pays a single price for a license covering both past and estimated future infringing sales. It is up to you, based on the evidence, to decide what type of royalty (if any) is appropriate in this case.

****

With those instructions, Ladies and Gentlemen, you will now hear closing arguments from counsel from each of the parties.

## XXIII. REMARKS FOLLOWING CLOSING ARGUMENTS (AGREED)

I would now like to provide you with a few final instructions before you begin your deliberations. You must perform your duties as jurors without bias or prejudice as to any party. The law does not permit you to be controlled by sympathy, prejudice, or public opinion. All parties expect that you will carefully and impartially consider all the evidence, follow the law as I have given it to you, and reach a just verdict, regardless of the consequences.

Answer each question from the facts as you find them. Do not decide who you think should win and then answer the questions accordingly. Your answers and your verdict must be unanimous.

You should consider and decide this case as a dispute between persons of equal standing in the community, of equal worth, and holding the same or similar stations in life. This is true in patent cases between corporations, partnerships, or individuals. A patent owner is entitled to protect its patent rights under the United States Constitution. This includes bringing suit in a United States District Court for money damages for infringement. The law recognizes no distinction among types of parties. All corporations, partnerships and other organizations stand equal before the law, regardless of size or who owns them, and are to be treated as equals.

When you retire to the jury room to deliberate on your verdict, you will each have a copy of this charge to take with you. If you desire to review any of the exhibits which the Court has

admitted into evidence, you should advise me by a written note delivered to the Court Security Office, and I will send that exhibit or exhibits to you. Once you retire, you should select your Foreperson and conduct your deliberations. If you recess during your deliberations, follow all of the instructions that the Court has given you about your conduct during the trial. After you have reached your verdict, your Foreperson is to fill in on the verdict form which reflects your answers to the questions. Do not reveal your answers until such time as you are discharged, unless otherwise directed by me. You must never disclose to anyone, not even to me, your numerical division on any question.

Any notes that you have taken during this trial are only aids to memory. If your memory should differ from your notes, then you should rely on your memory and not on the notes. The notes are not evidence. A juror who has not taken notes should rely on his or her independent recollection of the evidence and should not be unduly influenced by the notes of other jurors. Notes are not entitled to any greater weight than the recollection or impression of each juror about the testimony.

If you want to communicate with me at any time, please give a written message or question to the Court Security Officer, who will bring it to me. I will then respond as promptly as possible either in writing or by having you brought into the courtroom so that I can address you orally. I will always first disclose to the attorneys your question and my response before I answer your question.

After you have reached a verdict and I have discharged you, you are not required to talk with anyone about the case unless the Court orders otherwise.

You may now retire to the jury room to deliberate.