# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | | |
|---|---|---|
| CORE WIRELESS LICENSING S.A.R.L., | § § § § § § § § | Case No. 2:14-cv-911-JRG-RSP (lead) |
| v. | | |
| LG ELECTRONICS, INC., AND LG ELECTRONICS MOBILECOMM U.S.A., INC. | | |

## MEMORANDUM ORDER

This Order pertains to Case No. 2:14-cv-0911 (the "-911 Case"). The following motions are before the Court:

- LG's[1] Motion to Exclude Opinions and Testimony of Dr. Stephen Magee (Dkt. No. 269);

- Core's[2] Motion to Exclude Opinions and Testimony of Dr. Thomas Vander Veen (Dkt. No. 283);

- LG's Motion to Strike the Supplemental Report of Dr. Magee (Dkt. No. 348); and

- Core's Motion to Strike the Supplemental Rebuttal Report of Dr. Vander Veen (Dkt. No. 396).

Each motion seeks to exclude the opinions of a damages expert either under *Daubert* or on untimeliness grounds.

## I. LAW

**A. Rule 702**

Rule 702 provides that an expert witness may offer opinion testimony if (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the

---

[1] "LG" is Defendants LG Electronics, Inc. and LG Electronics Mobilecomm U.S.A., Inc.
[2] "Core" is Plaintiff Core Wireless Licensing S.a.r.l.

evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case. Fed. R. Evid. 702.

"The inquiry envisioned by Rule 702 is . . . a flexible one," but, in *Daubert*, the Supreme Court held that the Rules also "assign to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharms. Inc.*, 509 U.S. 579, 594, 597 (1993); *see also Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1321 (Fed. Cir. 2014) ("Experts routinely rely upon other experts hired by the party they represent for expertise outside of their field.").

"The relevance prong [of *Daubert*] requires the proponent [of the expert testimony] to demonstrate that the expert's 'reasoning or methodology can be properly applied to the facts in issue.'" *Johnson v. Arkema, Inc.*, 685 F.3d 452, 459 (5th Cir. 2012) (quoting *Curtis v. M & S Petroleum, Inc.*, 174 F.3d 661, 668 (5th Cir. 1999)). "The reliability prong [of *Daubert*] mandates that expert opinion 'be grounded in the methods and procedures of science and . . . be more than unsupported speculation or subjective belief.'" *Johnson*, 685 F.3d at 459 (quoting *Curtis*, 174 F.3d at 668).

In assessing the "reliability" of an expert's opinion, the trial court may consider a list of factors including: "whether a theory or technique . . . can be (and has been) tested," "whether the theory or technique has been subjected to peer review and publication," "the known or potential rate of error," "the existence and maintenance of standards," and "general acceptance" of a theory in the "relevant scientific community." *Daubert*, 509 U.S. at 593–94; *see also Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 150 (1999) ("*Daubert* makes clear that the factors it mentions do *not* constitute a 'definitive checklist or test.'"); *U.S. v. Valencia*, 600 F.3d 389, 424 (5th Cir. 2010).

It is not proper to use Rule 702 as a vehicle to usurp the fact-finding role of the jury, nor is exclusion under Rule 702 an appropriate substitute for the Court's power to grant summary judgement or judgement as a matter of law when such relief is warranted:

> [R]espondent seems to us to be overly pessimistic about the capabilities of the jury and of the adversary system generally. Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence. Additionally, in the event the trial court concludes that the scintilla of evidence presented supporting a position is insufficient to allow a reasonable juror to conclude that the position more likely than not is true, the court remains free to direct a judgment, Fed. Rule Civ. Proc. 50(a), and likewise to grant summary judgment, Fed. Rule Civ. Proc. 56.

*Daubert*, 509 U.S. at 596. "The proponent need not prove to the judge that the expert's testimony is correct, but she must prove by a preponderance of the evidence that the testimony is reliable." *Johnson*, 685 F.3d at 459 (quoting *Moore v. Ashland Chem., Inc.*, 151 F.3d 269, 276 (5th Cir. 1998) (en banc)). At base, "the question of whether the expert is credible or the opinion is correct is generally a question for the fact finder, not the court." *Summit 6, LLC v. Samsung Elecs. Co., Ltd.*, 802 F.3d 1283, 1296 (Fed. Cir. 2015).

**B. Damages**

Upon a finding of infringement, a patent holder is entitled to "damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer." 35 U.S.C. § 284. "The patentee . . . must in every case give evidence tending to separate or apportion the defendant's profits and the patentee's damages between the patented feature and the unpatented features . . . [unless] the entire value of the whole machine, as a marketable article, is properly and legally attributable to the patented feature." *Garretson v. Clark*, 111 U.S. 120, 121 (1884). Accordingly, proof of damages must be carefully tied to "the claimed invention's footprint in the market place." *VirnetX, Inc. v. Cisco Sys.*, 767 F.3d 1308, 1327 (Fed. Cir. 2014); *CSIRO v. Cisco Sys.*, 809 F.3d 1295 (Fed. Cir. 2015) ("damages awarded for

patent infringement must reflect the value attributable to the infringing features of the product, and no more").

"[E]stimating a 'reasonable royalty' is not an exact science. As such, the record may support a range of 'reasonable' royalties, rather than a single value. Likewise, there may be more than one reliable method for estimating a reasonable royalty." *Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1315 (Fed. Cir. 2014). In determining whether to admit or exclude a damages opinion under Rule 702, "[t]he essential requirement is that the ultimate reasonable royalty award must be based on the incremental value that the patented invention adds to the end product." *Ericsson, Inc. v. D-Link Sys.*, 773 F.3d 1201, 1226 (Fed. Cir. 2014).

### C. Timeliness

A party must disclose the opinions of its experts "at the times and in the sequence that the court orders." Fed. R. Civ. P. 26(a)(2)(D). A party who fails to timely disclose bears the burden of proving that such failure is harmless. *See Heidtman v. County of El Paso*, 171 F.3d 1038, 1040 (5th Cir. Tex. 1999). The Court considers four factors to determine whether a Rule 26 violation is harmless: "(1) [the party's] explanation for its failure to disclose the evidence, (2) the importance of the evidence, (3) the potential prejudice to [the opposing party] in allowing the evidence, and (4) the availability of a continuance." *CQ, Inc. v. TXU Min. Co., L.P.*, 565 F.3d 268, 280 (5th Cir. 2009).

## II. ANALYSIS

### A. Timeliness

LG and Core have each moved to strike the late-served supplemental damages reports of the adverse party's damages expert. (Dkt. Nos. 348, 396). Both supplemental reports were purportedly served in response to Core's withdrawal of certain patents in the -911 Case. *See* (Dkt.

4

No. 360 at 4; 399 at 2). Core's Supplemental Report of Dr. Magee was served December 11, 2015. (Dkt. No. 348-2 at 2).[3] LG's Supplemental Report of Dr. Vander Veen was served February 22, 2016. (Dkt. No. 396 at 4). Because these reports were served after the November 12, 2015 expert disclosure deadline, they are untimely under Fed. R. Civ. P. 26(a)(2)(D). *See* (Dkt. No. 126 at 2).

To determine whether a violation of Rule 26 was harmless, the Court considers the four *CQ* factors. *CQ*, 565 F.3d at 280. *First*, each party offers essentially the same "explanation for its failure to disclose the evidence," namely, that its expert served the supplemental report in response to Core's significant narrowing of the scope of the -911 Case.[4] Because each party's explanation for its late disclosure is substantially the same, neither party can credibly argue that the other's explanation is insufficient. The first factor, therefore, weighs in favor of supplementation.

*Second*, each party offers similar justifications for the "importance of the evidence." Core argues that without the supplemental report, "Dr. Magee's ultimate royalty rates would pertain to groups of patents that are no longer at issue." (Dkt. No. 360 at 18). Likewise, LG argues that the "jury will be best served by the presentation of damages numbers calculated from the actual number of patents at issue in this case, rather than a number of patents previously at issue." (Dkt. No. 399 at 8). Again, neither party can reasonably argue that the evidence is not important, since both offer largely the same argument for why it is important. This factor weights in favor of supplementation.

*Third*, the Court must consider the potential prejudice in allowing the evidence. Each party originally argued it had been prejudiced by the other's late supplemental report. LG later withdrew

---

[3] Citations to the docket use CM/ECF page numbers.

[4] Core raises the additional explanation that it was served in response to LG's supplemental interrogatory responses concerning LG's licensing practices. (Dkt. No. 360 at 4). LG raises the additional explanation that it was awaiting guidance from the Court as to the effect of Core's Notice of Withdrawal (Dkt. No. 266). (Dkt. No. 399 at 3).

its objections to Dr. Magee's Supplemental Report with respect to the -911 Case at the February 5, 2016 pretrial conference. *See* (Dkt. No. 396 at 4). Accordingly, there is no basis to conclude that LG would be prejudiced by Dr. Magee's Supplemental Report. Core raises a number of specific reasons why it is prejudiced by the Supplemental Report of Dr. Vander Veen. Some of these reasons are trivially meritless, such as Core's insistence that it cannot understand the meaning of the term "paid-up" royalty in Dr. Vander Veen's Supplement. (Dkt. No. 396 at 10). LG points out that this term was used repeatedly in both Dr. Vander Veen's Original Report and in Dr. Magee's Report. (Dkt. No. 399 at 7). Likewise, Core's complaint about a missing exhibit appears to have been promptly rectified by LG. (*Id.* at 6). However, Core raises a valid concern—Dr. Vander Veen's Supplemental Report was served on February 11, 2016, shortly before trial. LG responds that Dr. Vander Veen's opinions are based on the same methodologies and mathematical formulae disclosed in his original report; his opinions have simply been adjusted to take into account the reduced number of asserted patents and are "fully supported by and derivable from his Original Report." (*Id.* at 6). While the late date of Dr. Vander Veen's supplement might implicate prejudice concerns if he were expressing new opinions, it appears here that he has adjusted his prior opinions without changing them. Core has not identified any specific prejudice it would suffer from these supplemental opinions.

*Fourth*, a continuance is not reasonably available due to the proximity of trial. However, it is not clear that a continuance would be helpful in the absence of any identifiable prejudice. This factor is neutral.

In light of the foregoing, the Court finds that the parties' late disclosures were harmless and declines to strike the supplemental expert reports of Dr. Magee and Dr. Vander Veen.

**B. Motion to Strike Dr. Magee**

LG moves to strike Dr. Magee's damages opinions under Rule 702. (Dkt. No. 269). Because the Court has declined to strike Dr. Magee's Supplemental Report as untimely, the Court will consider both Dr. Magee's Original and Supplemental Reports together in determining whether his opinions are admissible. LG raises three categories of challenges under Rule 702: (1) that Dr. Magee has selected the wrong hypothetical negotiation date (*id.* at 8–9), (2) that Dr. Magee's analysis of the Georgia-Pacific factors is "conclusory," (*id.* at 4–7), and (3) that Dr. Magee's opinions run afoul of Federal Circuit jurisprudence regarding apportionment and the entire market value rule ("EMVR") (*id.* at 7–8, 9–15).

LG's challenge to Dr. Magee's hypothetical negotiation date is moot in light of his supplemental report, which addresses LG's concerns by identifying a later hypothetical negotiation date occasioned by Core's withdrawal of the '667 Patent. (Dkt. No. 348-2 at 13–14). LG has not challenged this new date under Rule 702.

LG's second argument—that Dr. Magee's analysis of the *Georgia-Pacific* factors is "conclusory"—is not well-founded. LG contends "Dr. Magee does not state that any value is used as a starting point in the analysis, whether any particular factor moved the rates up or down, or whether any particular factor was ultimately weighed more heavily than others." (Dkt. No. 269 at 6). This characterization of Dr. Magee's opinions, while literally true, belies the fact that he performs a detailed economic analysis under each *Georgia-Pacific* factor, describing the evidence he considered (or elected not to consider) and his reasons for doing so. *See* (Dkt. No. 269-1 at 117–133). The Federal Circuit has "never described the *Georgia-Pacific* factors as a talisman for royalty rate calculations" and has stated it is not necessarily correct to "resort to the factors to justify urging an increase or a decrease in a royalty calculation." *See Ericsson*, 773 F.3d at 1230. In

other words, the *Georgia-Pacific* analysis is a flexible one. There is no legal requirement that an expert begin with a particular "starting point" and then use the fifteen factors to nudge the royalty up or down. Here, Dr. Magee frames his economic analysis around the *Georgia-Pacific* factors and offers his royalty rate opinions as a conclusion, having considered the applicability (or inapplicability) of each factor. In doing so, he spells out the economic principles and methods on which he relies. The Court cannot conclude that this analysis is unreliable under Rule 702.

Finally, LG argues that Dr. Magee's opinions run afoul of the EMVR, which requires that the "ultimate reasonable royalty award must be based on the incremental value that the patented invention adds to the end product." *Ericsson*, 773 F.3d at 1226. Dr. Magee's report identifies the smallest salable patent practicing unit, attempts to estimate the value of that unit using economic principles, then attempts to isolate the fraction of that value the parties would attribute to the patented features at the hypothetical negotiation. *See* (Dkt. No. 269-1 at 131–134). Accordingly, Dr. Magee's opinions espouse compliance with the legal framework of the EMVR and he applies reliable economic reasoning in doing so. It may be that, after presenting all its evidence, Core will have failed to meet its burden to prove the "incremental value that the patented invention adds to the end product." But determining the weight of the evidence is not appropriate under Rule 702; this is a task for the jury, or for the Court pursuant to an appropriate motion under Rule 50. *See Daubert*, 509 U.S. at 596.

Accordingly, the Court will not strike Dr. Magee's opinions.

**C. Motion to Strike Dr. Vander Veen**

Core moves to strike Dr. Vander Veen's damages opinions under Rule 702. (Dkt. No. 283). Core argues that the comparable license agreements and patent valuations Dr. Vander Veen relies on in forming some of his opinons are not sufficiently comparable to the patents-in-suit.

The Federal Circuit has held that "alleging loose or vague comparability between different technologies or licenses does not suffice." *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 79 (Fed. Cir. 2012). However, an expert may rely on comparable licenses that differ in some respects from the hypothetical agreement where he "account[s] for the technological and economic differences between them." *See Wordtech Sys. v. Integrated Networks Solutions, Inc.*, 609 F.3d 1308, 1320 (Fed. Cir. 2010). Here, Dr. Vander Veen does not rely on allegations of "loose" or "vague" comparability. He offers opinions for each license or valuation that explain his economic comparability analysis in detail. *See, e.g.* (Dkt. No. 300-1 at 57–60, 64–65, 71–75, 80). Like LG, Core fundamentally attacks the weight of the evidence rather than the sufficiency of Dr. Vander Veen's analysis under Rule 702. "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596. Dr. Vander Veen identifies and applies reliable economic principles to opine that the transactions and valuations he relies upon are comparable and to account for any relevant differences.

The Court declines to strike Dr. Vander Veen's opinions.

## III. CONCLUSION

For the foregoing reasons, LG's Motions to Strike Dr. Magee (Dkt. Nos. 269, 348) are **DENIED**. Core's Motions to Strike Dr. Vander Veen (Dkt. Nos. 283, 396) are **DENIED**.

**SIGNED this 19th day of March, 2016.**

_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE