# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | | |
|---|---|---|
| CORE WIRELESS LICENSING S.A.R.L., | § § § | Case No. 2:14-cv-911-JRG-RSP (lead) |
| v. | § § § | Case No. 2:14-cv-912-JRG-RSP |
| LG ELECTRONICS, INC., AND LG ELECTRONICS MOBILECOMM U.S.A., INC. | § § § § | |

## **MEMORANDUM ORDER**

Before the Court is Defendants' Notice Concerning Motions to Exclude (Dkt. No. 543).

LG contends that the following issues remain ripe for adjudication in Case No. 2:14-cv-912:

- LG's argument that "Dr. Magee's Royalty Rates are Conclusory" (Dkt. 269 at 3–6 (§ IV.A); *see also* Dkt. 319 at 1–3 (§ I)).

- LG's argument that "Dr. Magee Fails to Link His Calculation of Potential Damages to the Value of Patented Features" (Dkt. 269 at 6–7 (§ IV.B); *see also* Dkt. 319 at 3–4 (§ [II])).

Counsel for Core Wireless stated that it does not agree that these issues remain ripe for adjudication.

(Dkt. No. 543 at 1.)[1]

The Court therefore issues this Order regarding the purportedly ripe issues in LG's Motion to Exclude Opinions and Testimony of Dr. Stephen Magee (Dkt. No. 269; "Motion to Exclude"). This Order supplements, but does not supersede, the Court's Order on LG's Motion to Exclude in Case No. 2:14-cv-911. (Dkt. No. 415.)

---

[1] Citations to the docket use the page numbers assigned by the Court's CM/ECF system.

## I. LAW

### A. Rule 702

Rule 702 provides that an expert witness may offer opinion testimony if (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case. Fed. R. Evid. 702.

"The inquiry envisioned by Rule 702 is . . . a flexible one," but, in *Daubert*, the Supreme Court held that the Rules also "assign to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharms. Inc.*, 509 U.S. 579, 594, 597 (1993); *see also Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1321 (Fed. Cir. 2014) ("Experts routinely rely upon other experts hired by the party they represent for expertise outside of their field.").

"The relevance prong [of *Daubert*] requires the proponent [of the expert testimony] to demonstrate that the expert's 'reasoning or methodology can be properly applied to the facts in issue.'" *Johnson v. Arkema, Inc.*, 685 F.3d 452, 459 (5th Cir. 2012) (quoting *Curtis v. M & S Petroleum, Inc.*, 174 F.3d 661, 668 (5th Cir. 1999)). "The reliability prong [of *Daubert*] mandates that expert opinion 'be grounded in the methods and procedures of science and . . . be more than unsupported speculation or subjective belief.'" *Johnson*, 685 F.3d at 459 (quoting *Curtis*, 174 F.3d at 668).

In assessing the "reliability" of an expert's opinion, the trial court may consider a list of factors including: "whether a theory or technique . . . can be (and has been) tested," "whether the theory or technique has been subjected to peer review and publication," "the known or potential

rate of error," "the existence and maintenance of standards," and "general acceptance" of a theory in the "relevant scientific community." *Daubert*, 509 U.S. at 593–94; *see also Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 150 (1999) ("*Daubert* makes clear that the factors it mentions do *not* constitute a 'definitive checklist or test.'"); *U.S. v. Valencia*, 600 F.3d 389, 424 (5th Cir. 2010).

It is not proper to use Rule 702 as a vehicle to usurp the fact-finding role of the jury, nor is exclusion under Rule 702 an appropriate substitute for the Court's power to grant summary judgement or judgement as a matter of law when such relief is warranted:

> [R]espondent seems to us to be overly pessimistic about the capabilities of the jury and of the adversary system generally. Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence. Additionally, in the event the trial court concludes that the scintilla of evidence presented supporting a position is insufficient to allow a reasonable juror to conclude that the position more likely than not is true, the court remains free to direct a judgment, Fed. Rule Civ. Proc. 50(a), and likewise to grant summary judgment, Fed. Rule Civ. Proc. 56.

*Daubert*, 509 U.S. at 596. "The proponent need not prove to the judge that the expert's testimony is correct, but she must prove by a preponderance of the evidence that the testimony is reliable." *Johnson*, 685 F.3d at 459 (quoting *Moore v. Ashland Chem., Inc.*, 151 F.3d 269, 276 (5th Cir. 1998) (en banc)). At base, "the question of whether the expert is credible or the opinion is correct is generally a question for the fact finder, not the court." *Summit 6, LLC v. Samsung Elecs. Co., Ltd.*, 802 F.3d 1283, 1296 (Fed. Cir. 2015).

**B. Damages**

Upon a finding of infringement, a patent holder is entitled to "damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer." 35 U.S.C. § 284.

"[E]stimating a 'reasonable royalty' is not an exact science. As such, the record may support a range of 'reasonable' royalties, rather than a single value. Likewise, there may be more

than one reliable method for estimating a reasonable royalty." *Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1315 (Fed. Cir. 2014). However, any method of estimating a reasonable royalty must adhere to the entire market value rule ("EMVR"), which requires that "[t]he patentee . . . must in every case give evidence tending to separate or apportion the defendant's profits and the patentee's damages between the patented feature and the unpatented features . . . [unless] the entire value of the whole machine, as a marketable article, is properly and legally attributable to the patented feature." *Garretson v. Clark*, 111 U.S. 120, 121 (1884). Accordingly, proof of damages must be carefully tied to "the claimed invention's footprint in the market place." *VirnetX, Inc. v. Cisco Sys.*, 767 F.3d 1308, 1327 (Fed. Cir. 2014); *Ericsson, Inc. v. D-Link Sys.*, 773 F.3d 1201, 1226 (Fed. Cir. 2014) ("The essential requirement is that the ultimate reasonable royalty award must be based on the incremental value that the patented invention adds to the end product."); *CSIRO v. Cisco Sys.*, 809 F.3d 1295 (Fed. Cir. 2015) ("damages awarded for patent infringement must reflect the value attributable to the infringing features of the product, and no more").

## II. ANALYSIS

LG moves to strike Dr. Magee's damages opinions under Rule 702. (Dkt. No. 269.) This Order addresses LG's arguments about the "SEPs-in-suit"[2] which include the two remaining patents-in-suit, Patent Nos. 6,633,536 and 7,804,850.

### A. Royalty Rates and *Georgia-Pacific*

LG contends "[f]or both the SEPs-in-suit and the IMPs-in-suit, Dr. Magee goes through the motions of conducting an analysis of the Georgia-Pacific factors, but then fails to link those factors

---

[2] "SEP" is an abbreviation for "standard essential patent" used by the parties and by Dr. Magee to denote the asserted patents in Case No. 2:14-cv-912. The parties dispute whether the asserted patents are, in fact, essential to any standard. (*See* Dkt. No. 491 at 8.) The Court's use of the abbreviation "SEPs-in-suit" is for convenience and does not indicate a position on the standard essentiality of any patent.

4

to any royalty rate calculation." (Dkt. No. 269 at 5.) LG further argues that "Dr. Magee does not state that any value is used as a starting point in the analysis, whether any particular factor moved the rates up or down, or whether any particular factor was ultimately weighed more heavily than others." (*Id.* at 6.)

LG's position regarding the *Georgia-Pacific* factors is essentially the same as in Case No. 2:14-cv-911, and its argument is unavailing for the same reasons. (*See* Dkt. No. 415 at 7–8.)

With respect to the GSM, UMTS/HSPA, and LTE standard, Dr. Magee performs a detailed economic analysis under each *Georgia-Pacific* factor, describing the evidence he considered (or elected not to consider) and his reasons for doing so. *See* (Dkt. No. 269-1 at 63–117.) The Federal Circuit has "never described the *Georgia-Pacific* factors as a talisman for royalty rate calculations" and has stated it is not necessarily correct to "resort to the factors to justify urging an increase or a decrease in a royalty calculation." *See Ericsson*, 773 F.3d at 1230. In other words, the *Georgia-Pacific* analysis is a flexible one. There is no legal requirement that an expert begin with a particular "starting point" and then use the fifteen factors to nudge the royalty up or down. Here, Dr. Magee frames his economic analysis around the *Georgia-Pacific* factors and offers his royalty rate opinions as a conclusion, having considered the applicability (or inapplicability) of each factor. In doing so, he spells out the economic principles and methods on which he relies.

However, Dr. Magee does not perform this kind of detailed analysis for the MMS standard. His opinion about the appropriate rate for the MMS standard is wholly conclusory and he makes no attempt to explain his analysis. (Dkt. No. 269-1 at ¶ 316.) Accordingly, the Court will strike paragraph 316 and the resultant $0.025 royalty rate associated with MMS.[3]

---

[3] It appears likely that Dr. Magee's opinions about the MMS royalty would not be presented at trial irrespective of this ruling. Dr. Magee opines that the MMS standard relates to the '049 and '398 Patents, which are no longer asserted in this case. (*See* Dkt. No. 269-1 at ¶¶ 122, 282.) Because LG

### B. Apportionment

LG argues that "Dr. Magee does not apportion the marginal value of the patented features within the cost of each accused device. Instead, he uses the entire value of the accused devices, and profits derived from the entire value, to determine a royalty rate." (Dkt. No. 269 at 7.) LG points to three specific instances in which Dr. Magee allegedly does this for the SEPs-in-suit, paragraphs 248–49, 311, and 318 of his report. (*Id.*)

Dr. Magee does not use the entire value of any accused device as a royalty base in the portions of his report LG cites. Instead, Dr. Magee attempts to estimate the profit margin of the accused devices; he then uses this profit metric in his analysis of *Georgia-Pacific* factor 8 ("Profitability of the Accused Products") and as a check to determine whether his calculated royalty rate is fair and reasonable in the FRAND context. (*See* Dkt. No. 269-1 at ¶¶ 248–49, 311, 318.) It is true that he cites the average price of an LG accused device, but he only uses this number to derive a profit margin. The Court ascertains no conflict between this mode of analysis and the entire market value rule. Profitability is a relevant factor in a FRAND damages analysis, and Dr. Magee does not attempt to base his damages calculation on the entire value of any accused product.

The admissibility of these opinions under Rule 702 does not, however, imply that it would be proper for Dr. Magee to publish the entire revenue or profit of an accused device to the jury at trial. There is an "'important evidentiary principle' that 'care must be taken to avoid misleading the jury by placing undue emphasis on the value of the entire product.' . . . disclosure of the end product's total revenue 'cannot help but skew the damages horizon for the jury, regardless of the contribution of the patented component to this revenue.'" *CSIRO*, 809 F.3d at 1302. While it is

---

contends this issue is not moot (Dkt. No. 543), the Court makes this ruling out of an abundance of caution.

appropriate for Dr. Magee to use entire revenue and profit figures to calculate profit margins in his expert report, it may be inappropriate as an evidentiary matter for him to present these figures to the jury.

Because there is nothing in Dr. Magee's expert report that suggests he will run afoul of the "important evidentiary principle" expounded in cases such as *CSIRO* and *Uniloc*, the Court will not strike any opinion on this basis. However, the parties should assiduously follow the Federal Circuit's guidance and should raise contemporaneous objections to any improper or prejudicial evidence at trial.

### III. CONCLUSION

For the foregoing reasons, LG's Motion to Strike (Dkt. Nos. 269) is **GRANTED-IN-PART** as to ¶ 316 of Dr. Magee's report. The Motion to Strike is **DENIED** as to all other requested relief.

**SIGNED this 26th day of August, 2016.**

*/s/ Roy S. Payne*
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE