```
 1
 2                IN THE UNITED STATES DISTRICT COURT
 3               FOR THE EASTERN DISTRICT OF TEXAS
 4                        MARSHALL DIVISION
 5   CORE WIRELESS LICENSING          )(
 6   S.A.R.L.                         )(    CIVIL DOCKET NO.
 7                                     )(    2:14-CV-912-JRG-RSP
 8   VS.                              )(    MARSHALL, TEXAS
 9                                     )(
10   LG ELECTRONICS, INC., ET AL.    )(    SEPTEMBER 9, 2016
11                                     )(    2:05 P.M.
12                       PRE-TRIAL HEARING
13           BEFORE THE HONORABLE JUDGE ROY S. PAYNE
14                UNITED STATES MAGISTRATE JUDGE
15
16   APPEARANCES:
17   FOR THE PLAINTIFF:   (See Attorney Attendance Sheet docketed in
18                         minutes of this hearing.)
19   FOR THE DEFENDANTS: (See Attorney Attendance Sheet docketed in
20                         minutes of this hearing.)
21   COURT REPORTER:      Shelly Holmes, CSR-TCRR
                          Official Reporter
22                        United States District Court
                          Eastern District of Texas
23                        Marshall Division
                          100 E. Houston Street
24                        Marshall, Texas  75670
                          (903) 923-7464
25
```

1   (Proceedings recorded by mechanical stenography, transcript
    produced on a CAT system.)

2                            I N D E X

3

4   September 9, 2016

5                                                    Page

6        Appearances                                  1

7        Hearing                                      3

8        Court Reporter's Certificate                42

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          LAW CLERK:  All rise.

2          THE COURT:  Thank you.  Please be seated.

3          For the record, we're here for the really, really

4    final pre-trial conference in Core Wireless versus LG, which is

5    Case No. 6:14-912 (sic) on our docket.

6          Would counsel state their appearances for the record?

7          MR. MIRZAIE:  Good afternoon, Your Honor.  This is

8    Resa Noroozi on behalf of Core Wireless from Russ August &

9    Kabat.  With me are Kayvan Noroozi and Betty DeRieux.

10         THE COURT:  All right.  Thank you, Mr. Mirzaie.

11         MR. MANN:  Good afternoon, Your Honor.  Mark Mann on

12   behalf of LG, and with me today is Nathaniel Love, and we're

13   ready to proceed, Your Honor.

14         THE COURT:  All right.  Thank you, Mr. Mann.

15         Let me see, who wants to go first as to what we need

16   to take up today?

17         MR. NOROOZI:  Your Honor, we'd be happy to.

18         THE COURT:  All right.  Mr. Noroozi.

19         MR. NOROOZI:  Thank you, Your Honor.

20         Your Honor, at the outset, I want to clarify one point

21   that was at issue in the email exchange or the joint email that

22   we sent to the Court.  Some of the items on our list are ones

23   that -- are our issues that we've sort of affirmatively brought

24   up, some of them are actually issues that LG has raised, and

25   we'd just like to get them resolved.

1             And so turning to that list of issues, the first item

2     is exhibits that we have put on our list that are numbered

3     PTX-1692 through 1695.

4             The issue here breaks down as follows, Your Honor:

5     There are two of these exhibits, 1693 and 1695, that were

6     always on Defendants' list.  And these exhibits are deposition

7     exhibits to the deposition of Mr. Sebire, who is the inventor

8     of the '850 patent.  They were introduced at the deposition by

9     LG.

10            LG has always known about the exhibits, and LG has

11    always had the exhibits on their list until just last week.  On

12    September 1st, for the first time, LG removed the exhibits from

13    their list after they had been pre-admitted, without any

14    objections from us.  And we have had a reservation provision on

15    our list all along that provides that what's on their list is

16    deemed to be on our list.

17            As soon as they removed the exhibits from their list,

18    we added them to our list on September 5th on Labor Day in --

19    in all haste.  Because they have been pre-admitted and we never

20    objected to them and because of all the notice that LG has had

21    about them, we don't really see what the dispute is here.  LG

22    objects to them as -- as untimely and not disclosed and -- and

23    so forth.  So we'd like to resolve that question.

24            And there are two other exhibits in this pile, and I

25    can move on to them, as well, now, or we can -- I can pause

1   here if Your Honor has questions.

2          THE COURT:  Are the other exhibits of the same

3   category that they're off of the other side's list?

4          MR. NOROOZI:  1694 is, Your Honor.  1694 is an exhibit

5   that was on LG's list until late July -- about July 29th.  It

6   was on their list until the third -- their third list.  They

7   voluntarily dropped that exhibit.  We -- it's also a deposition

8   exhibit to Mr. Sebire's deposition.  It's something they've

9   obviously known about in many different ways.

10         We had a hearsay objection to the exhibit, however, of

11  course, the hearsay objection is that they don't have the

12  witness.  We have the witness.  We're bringing Mr. Sebire.  And

13  so they dropped the exhibit before the August 12th hearing as

14  to pre-admission.  So it was not formally pre-admitted.  We

15  have not identified it as pre-admitted on our list because of

16  that fact, but it's an exhibit that's long been known in this

17  case and disclosed by them.  And we just put it on our list,

18  along with these other Sebire exhibits.

19         1692, which is the last of these four documents, is a

20  color version of 1693, and it's much more legible and -- and

21  easy to follow.

22         In addition to the fact that it has color, it has a

23  track changes blurb on it that -- that reflects the changes

24  that were supposed to be in 1693.  And those changes are also

25  reflected in 1694.  And Mr. Sebire, obviously, is the person

1   who made the changes and -- and these changes are important

2   because they show what his additions were to the existing

3   standards.  And so we have the witness to talk about it.  It's

4   the same document as 1693, except it shows the fact of the

5   changes and it's in color.

6           1693 was always on their list, was pre-admitted.  We

7   never objected to it.  It was a deposition exhibit.  And,

8   therefore, we'd like to be able to use 1692 with Mr. Sebire, as

9   well.

10          THE COURT:  All right.

11          MR. NOROOZI:  And I have copies of these documents if

12   the Court would like to see them.

13          THE COURT:  If you need these documents, why weren't

14   they on your list?

15          MR. NOROOZI:  Your Honor, we had an understanding

16   that -- I'm sorry, that what is on their list is on our list,

17   and we didn't need to duplicate things on our list.  One --

18          THE COURT:  By understanding, you mean agreement?

19          MR. NOROOZI:  We had expressed that in our exhibit

20   list consistently from the outset.  We had language at the end

21   of our exhibit list so stating.

22          THE COURT:  Uh-huh.  And is there any agreement

23   between the parties on that?

24          MR. NOROOZI:  Well, it -- it's implied from LG's

25   position that they don't accept our reservation language

1   because as I understand it, they're taking a position that we

2   did not disclose these documents.  Again, there's no prejudice

3   or harm to LG.  These documents are deposition exhibits that

4   they used themselves.  They have testimony on them from the

5   inventor.  And they were on their list until just last week --

6   at least two of the four, to be specific.

7           THE COURT:  I'm not aware of any basis in the rules

8   for a reservation of either the right to call the witnesses

9   from the other side or the right to offer the exhibits from the

10  other side.  I understand that -- that that is language that

11  frequently appears, but I think that it defeats the purpose of

12  requiring disclosures of what you're going to use.

13          Now, do both sides have that language on their lists?

14          MR. NOROOZI:  I believe that's true, Your Honor.

15          THE COURT:  All right.  Well, then let me hear from

16  the other side.

17          MR. LOVE:  Thank you, Your Honor.  Nathaniel Love for

18  LG.

19          The documents that they're seeking to add were first

20  put on their list Tuesday morning.  So we think they're

21  untimely, but the key issue for us is cherry picking by Core of

22  these standards-related documents.  It's -- it's a central

23  issue in this case -- these are all related to the '850

24  patent -- whether the '850 patent is actually essential to the

25  standard.

1          And leading into the August 12th pre-trial, we had a

2    large set of documents relating to the standards process and

3    the '850 patent that were on our exhibit list, including

4    correspondence among the inventors.

5          So Core objected to some, not all of these documents,

6    and many of those objections were sustained, and particularly

7    the email correspondence that we sought to introduce between

8    Mr. Sebire, the inventor, and some other folks at Nokia.  That

9    was not pre-admitted.

10          And as Your Honor will recall, there were a series of

11    standards-related documents that were -- were given an

12    asterisks that they -- they could possibly be admitted at trial

13    if LG took certain additional steps to prove those up.

14          So based on those rulings, LG made a decision to

15    withdraw the set of standards-related documents that it sought

16    to present.  We -- we could no longer present the complete

17    picture we had intended.  So we withdrew those documents.  So

18    the -- the list -- the final list of pre-admitted exhibits,

19    none of those asterisks documents are on it and -- and a set of

20    other documents, including these two that they have noted were

21    previously on our list.  Those are withdrawn.

22          And so it's not really response for Core to say, well,

23    these were previously on our list because it doesn't address

24    the cherry-picking problem.  If they're allowed to pick back

25    four that they like, two ones that used to be on our list and

```
 1   two other ones, including a new document that wasn't actually
 2   produced in this case until Tuesday morning or late Monday
 3   night, that's going to create, in our view, a false impression
 4   to the jury as to who contributed what to the standards.
 5         In particular, the -- the new email that they want to
 6   add, they excluded -- they successfully got our email that we
 7   wanted excluded, and he said -- Mr. Noroozi said it was only on
 8   hearsay grounds that they had objected to our email.  That's
 9   not correct.  Their exhibit list objected to the email as
10   irrelevant, as -- and as prejudicial, as well.
11         Secondly, on -- on this last track changes document,
12   it's -- he noted that it's a track changes version of a
13   document that had previously been on our exhibit list.  But the
14   problem is what -- why are they adding this track changes
15   version?  They're arguing that the track changes mean
16   something.  These track changes show that a particular change
17   to the standard was proposed at a particular time by a
18   particular person and that that means something.
19         That's a brand new concept being introduced into the
20   case, and it goes right to the whole reason we had initially
21   put these standards documents on.  Who contributed what to the
22   standards and when.
23         And we do not think it's fair for -- at this very late
24   hour for them to be adding their own cherry-picked version of
25   that story in, especially with brand new exhibits that were
```

1    never produced before.

2           THE COURT:  All right.  And what is your response to

3    their argument that they have a reservation similar to the one

4    that you have of the right to offer any exhibits from the other

5    side's list?

6           MR. LOVE:  So, Your Honor, the -- the last set of

7    exhibits that they added before these were added before the

8    September 2nd pre-trial conference.  And some of those included

9    documents that had been previously on our list that had been

10   dropped along the way.  And I asked them:  Why is there a

11   reason you're adding these?

12          And they said:  Well, it's our understanding that you

13   might -- you could drop exhibits and we -- these are ones we

14   want to use, so we're adding them to our list.

15          So the -- the last addition of exhibits they did

16   before the last pre-trial was not consistent with what they're

17   saying now, which is they can go back and find anything that

18   had previously been on our list and then select that and -- and

19   use it.

20          THE COURT:  And --

21          MR. LOVE:  So I don't think there was an understanding

22   between the parties that -- that this would actually work that

23   way.

24          THE COURT:  All right.  Thank you, Mr. Love.

25          MR. NOROOZI:  Your Honor, if I may?

```
 1              THE COURT:  You may, Mr. Noroozi.

 2              MR. NOROOZI:  Thank you, Your Honor.

 3              So a couple of points, Your Honor, in response to what

 4     was just said.  The first is that it appears that what LG

 5     really wants is to be able to use these additional documents

 6     that they've now added to their list since we made our

 7     additions.  And that's - that's a separate topic that I'm very

 8     happy to address.

 9              But the notion that there's a prejudice here or an

10     untimeliness by us indicating formally on our list that we

11     intend to use documents that were introduced by LG at the

12     deposition of the inventor and have been on their list all

13     along and that we did not object to as to two of them that were

14     pre-admitted, the notion just doesn't really make a lot of

15     sense to us.

16              THE COURT:  Mr. Noroozi, the reason that bright line

17     rules exist is because it's almost impossible to make these

18     calls on a fairness and prejudice basis one-by-one.  These

19     documents weren't on your exhibit list before.  The reservation

20     that you're describing is simply not authorized by the rules,

21     and -- and -- and unless you have an agreement between the

22     parties on it, it's not effective.  So I'm -- I am going to

23     sustain the objection to the exhibits that you're now seeking

24     to add to your list.

25              MR. NOROOZI:  And so, Your Honor, then moving on to
```

```
 1   the newly added exhibits that they have, I assume that the same

 2   applies, which is that since those have -- I guess I can just

 3   ask counsel for LG, are you still proposing to use those

 4   exhibits?

 5           MR. LOVE:  No, Your Honor, we're not.  Those were only

 6   proposed in the event that you were going to consider

 7   pre-admitting those.

 8           THE COURT:  All right.

 9           MR. LOVE:  So we'll withdraw those.

10           THE COURT:  Then those exhibits will be removed from

11   the list, as well.

12           What's the next item?

13           MR. NOROOZI:  The next item is the scope of LG's

14   recently updated sales figures, Your Honor.

15           We asked LG for an update to their sales production so

16   that we could update our damages, and when we received the

17   figures, we felt that they were a bit thin, that maybe

18   something was missing.  And through meet and confer, we

19   discovered that, in fact, there are models that have not been

20   included in this latest set that were previously included in --

21   in LG's last production.  And we asked -- we asked LG why that

22   was, and -- and we've stated that we believe that obviously

23   these models should be included.

24           As I understand it, LG's position is that these

25   particular models at issue were not individually identified in
```

 1    the preliminary infringement contentions as to the two patents

 2    that remain in suit.

 3            And on that basis, they're saying that they should not

 4    be a part of Dr. Magee's supplement before trial.

 5            There are several problems with that position.  The

 6    first is that it -- it presumes a conclusion that LG is not in

 7    a position to -- to presume.

 8            THE COURT:  I -- I think I -- we discussed this

 9    before, but let me hear from them on this, and I'll give you a

10    chance to respond.

11            MR. NOROOZI:  Yes, Your Honor.

12            MR. LOVE:  Thank you, Your Honor.

13            So the infringement contentions that they served in

14    January 2015 provide specific lists of models, and they're

15    defined in separate categories.  And if I could, I'll just put

16    on the ELMO --

17            THE COURT:  But I thought the last time we were here,

18    it was -- I made it clear that what I think your obligation is,

19    is to update your figures, not to change them.  If you -- if

20    there are models that you don't think should be included,

21    that's a different question than whether you are updating your

22    figures, so I --

23            MR. LOVE:  Understood, Your Honor.  Then -- then let

24    me move to -- to what I think responds to that point.

25            THE COURT:  All right.

1          MR. LOVE:  So on the ELMO, this is the email they sent

2    us that identifies specific models that they say we need to

3    update the sales data on.  And I've gone back and looked.  None

4    of the models on there, with the exception of the second one,

5    are in their preliminary infringement contentions at all.  None

6    of those models are in Dr. Jackson's table of his accused

7    devices.  None of those models are in Dr. Wesel's table --

8          THE COURT:  Were they in the sales figures that you

9    provided before?

10         MR. LOVE:  No.  None of these were, with the exception

11   of D520BK.  That one is in the update that we mostly recently

12   provided, so they have that information.

13         THE COURT:  But what I'm asking is were any of those

14   models in your earlier sales figures?

15         MR. LOVE:  No, I do not believe that they were.

16         THE COURT:  Well, then I don't know why we're talking

17   about them.

18         Let me hear from Plaintiff then.  Supposedly, as I

19   understand it, we're just talking about updating sales figures

20   for models that were previously provided.

21         MR. LOVE:  Yes, Your Honor.  And I think that to the

22   extent there's any confusion about it, there were -- there was

23   the 911 portion of the case.  There were phones that were only

24   accused under those patents.  There were phones that were only

25   accused in the 912 case, and the data they've been provided,

1  consistent with the previous update, comes from the same list

2  of phones we've been working with the entire time, and it

3  doesn't include these new ones.

4          THE COURT:  Okay.

5          MR. NOROOZI:  Your Honor, I don't believe that part of

6  what was said is accurate.  The models at issue that have --

7  that do not appear on this latest production did previously

8  appear on LG's second production of damages sales figures for

9  the case.  There were three -- there have been now three

10 productions, at least, as I understand it.

11         The first set predated Dr. Magee's report and did not

12 include these phones, I believe, because the phones had not yet

13 been released.  And so they did not appear in Dr. Magee's

14 report.

15         A second set was produced after Dr. Magee had served

16 his supplemental report, and so Dr. Magee did not issue a

17 further supplement, knowing that he would do that before trial.

18 And that second set of data included these phones.

19         But there's a broader issue here which is the scope of

20 our --

21         THE COURT:  Are you disagreeing with Mr. Love, or are

22 you talking about different things?

23         MR. NOROOZI:  I believe I'm disagreeing with Mr. Love,

24 if I understand what he said correctly, and I believe that he

25 said that the models at issue that don't appear in this latest

1    production have not appeared in previous productions, and I'm

2    disagreeing with that point.

3            In addition, I'm disagreeing with the description and

4    characterization of our infringement contentions.  Our

5    infringement contentions --

6            THE COURT:  I understand, but that's not an issue that

7    I'm dealing with right now.

8            MR. NOROOZI:  Yes.

9            THE COURT:  I -- how -- what evidence can you offer to

10   support your position that these models were covered in the

11   previous production since there is a disagreement on that?

12           MR. NOROOZI:  We can provide that to the Court

13   immediately after this hearing.  We have our experts available

14   to us, and we can just pull it from their documents to show

15   that these models were previously part of a production.

16           THE COURT:  All right.  Mr. Love, what I'm going to

17   ask you to do is to confer with Mr. Noroozi and see if you can

18   figure out why you're disagreeing on that and contact the

19   Court through Mr. Harris, and we can -- we'll set a hearing, if

20   we have to, to resolve it, but I would expect that that's

21   something that counsel would be able to determine, that either

22   they have been included in prior sales figures or they haven't.

23           So I'm -- I'm going to pass that for now, but ask the

24   two of you to work on that and let me know through Mr. Harris,

25   all right?

1          MR. LOVE:  Okay.

2          THE COURT:  What's next?

3          MR. NOROOZI:  Next, Your Honor, I'd like to address an

4    issue that LG has raised with respect to Qualcomm/LG evidence

5    used in our February expert reports.

6          LG is taking the position, as I understand it, that

7    these declarations are inadmissible and hearsay for the same

8    reasons as -- as was discussed with respect to the Qualcomm

9    testimony in the Apple case.  And we disagree strongly because

10   it's a completely different situation.  This is the exact

11   opposite situation.  These declarations were obtained from

12   Qualcomm in this case under this Court's subpoena, and they

13   relate directly to LG's source code -- source code build.

14   They're all --

15         THE COURT:  How are declarations obtained pursuant to

16   a subpoena?

17         MR. NOROOZI:  We subpoenaed Qualcomm, and as a part of

18   their production in response to the subpoena, they provided

19   these declarations.

20         THE COURT:  Well, so you didn't subpoena the

21   declarations, they just provided them to you in -- you

22   subpoenaed documents?

23         MR. NOROOZI:  I believe we subpoenaed both documents

24   and testimony.

25         THE COURT:  Okay.  And in lieu of the testimony, they

1    gave you declarations?

2            MR. NOROOZI:  That is my understanding.  And in

3    addition, we don't have the power to bring those Qualcomm

4    witnesses to this court, so they're unavailable.  And -- and

5    they're relied on by our experts, so there's no hearsay problem

6    in any case.

7            THE COURT:  Tell me how that makes them non-hearsay.

8            MR. NOROOZI:  It's -- it's -- we're not -- the

9    experts' reliance and opinions based on the declarations are

10   the part that I'm referring to.

11           THE COURT:  Okay.  Well, as you know, under Rule -- I

12   guess it's 703 -- experts can certainly rely upon hearsay in

13   order to support their opinions as long as it's the kind of

14   information that experts in the field routinely rely upon.

15   That does not make it admissible.  That just means they can

16   have an admissible opinion based on it.

17           So are you saying that you want to be able to admit

18   these declarations before the jury?

19           MR. NOROOZI:  Well, there are two issues.  LG objects

20   to even the utterance by our experts of opinions based on the

21   declarations.  So first and foremost, we disagree with that for

22   the reasons Your Honor said.

23           THE COURT:  How -- how are they going to object to

24   that?  I don't understand it.  They haven't filed Daubert

25   motions?

1           MR. NOROOZI:  They have not filed Daubert motions, and

2    I guess their in the best position to explain their views on

3    this item, so I -- I -- I'm sure they could do a better job of

4    that than I would.  And I'd be happy to cede the podium for a

5    moment if you'd like to hear that from them.

6           THE COURT:  Okay.  I'm just trying to figure out if we

7    have a dispute that needs to be resolved.

8           But, Mr. Love, can you address that?

9           MR. LOVE:  Yes, Your Honor.

10          The declarations at issue, they sought pre-admission

11   of these declarations in the earlier pre-trial conference, and

12   they were not admitted.  And so our concern is this.  Both

13   Dr. Jackson and Dr. Wesel submitted supplemental expert reports

14   that were just one page, after reviewing the declarations.

15   What the -- the -- the sort of truth of the matter that's in

16   the declarations is a claim that certain Qualcomm source code

17   functions are representative -- certain Qualcomm source code

18   functions in certain builds are representative of other

19   Qualcomm builds for other accused devices.  That's the

20   statement that's made in the declaration.

21          The supplemental expert reports simply repeat that

22   fact under the guise of an expert's opinion, but it's not an

23   opinion that's being expressed.  It's just the -- it's just the

24   expert restating the factual claim that's made in the

25   declaration.

1          And then the conclusions report is and I still believe

2    that LG infringes.  But there's no opinion that takes something

3    from the declaration and actually draws a conclusions from it.

4          What we're concerned about is the use of the expert

5    just stating the same fact that's in the declaration that was

6    already excluded and not admitted on hearsay grounds and just

7    curing that problem of pre-admission by having the expert say

8    the same fact as if it's true.

9          And so we haven't brought a motion to strike.  We're

10   just simply expecting that their testimony of these experts at

11   trial would be consistent with -- with the rules, Rule 702,

12   Rule 703.  And to the extent we view there's a problem with the

13   testimony that comes in, we -- we intend to object, but we --

14   we didn't seek to make another motion on this.

15          THE COURT:  And what will your objection be?

16          MR. LOVE:  Out objection would be the expert is simply

17   repeating the content of a declaration where the declaration

18   was not admitted.

19          THE COURT:  I don't think -- I'm not aware of a rule

20   of evidence to that effect.  So, I mean, you know, you've

21   got -- pick something that starts with a No. 1 or -- or --

22          MR. LOVE:  Or higher.

23          THE COURT:  -- goes through 1,100.  I mean, you --

24          MR. LOVE:  Any integer?  I'll take 703, Your Honor, if

25   I may.

```
 1              And I think the key there is that the -- the expert
 2    can express an opinion based on inadmissible evidence, but I
 3    don't think that's a loophole that allows an expert to simply
 4    testify as to facts that in -- in evidence that has already
 5    been excluded.
 6              Otherwise, the exclusion -- the exercise we went
 7    through with, you know, PTX-119 -- or -- or 1619, 1650, we
 8    spent a good amount of time in this in the pre-trial and, you
 9    know, sustained an objection to those documents.  But on their
10    view it doesn't matter because their expert can just tell us
11    what was in them anyway.
12              THE COURT:  You know, that -- that sort of thing
13    happens all the time.  I have parties who try to introduce the
14    expert's written report, and I exclude it because it's hearsay.
15    That doesn't mean that the expert can't testify to what's in
16    it.  The experts rely on all kinds of things that are not
17    admissible.
18              MR. LOVE:  Certainly --
19              THE COURT:  And so I -- you know, the mere fact that
20    his testimony is going to be similar or the same as something
21    that is in a hearsay document doesn't make it inadmissible.
22              MR. LOVE:  Sure, Your Honor.  So two responses to
23    that.
24              First of all, the -- in 703, whether that underlying
25    information can come in, the burden sort of shifts.  It really
```

1  has to show that the probative value substantially outweighs

2  the prejudice.  And the prejudice in this case is these

3  Qualcomm declarations came in after the close of discovery.

4  The statements in here from Mr. -- Mr. Giles and Mr. -- the

5  other ones -- I'm sorry I don't have the names with me -- we

6  were never able to cross-examine these witnesses to test the

7  basis of their claims and to -- and so to have something

8  produced after the close of discovery that we've had no ability

9  to test in a document that's been excluded to simply filter in

10  any way under the guise of expert, I don't think is permitted

11  under 703.

12        THE COURT:  I think that from what I'm hearing, your

13  real objection is to this supplemental report.

14        MR. LOVE:  It would be to testimony -- certainly, it's

15  fine if -- if the expert says in general the materials I've

16  reviewed from Qualcomm affirm my opinions.  But if the -- if

17  the expert says, these Qualcomm source code builds are

18  representative, these other Qualcomm source code builds, that

19  particular -- just repeating that fact, that's not a new -- a

20  new opinion.  That's a factual assertion made by a Qualcomm

21  engineer after the close of discovery that we've had no ability

22  to test.  We -- we objected to those declarations, and the --

23  our objection was sustained.

24        THE COURT:  There -- there may be something to your

25  timeliness argument, I don't know.  But as far as whether an

```
  1   expert can rely upon something he gets from an engineer that
  2   may be hearsay when he got it, I -- I don't think there's
  3   anything improper about that.  Nothing would have prevented
  4   this expert from picking up the phone and calling the Qualcomm
  5   engineer and asking him something and relying upon it, if
  6   that's what experts in his field routinely do.
  7           You know, the rest your argument is really about
  8   timing.  And I don't -- you know, that's a -- that's another
  9   matter.  But I don't see that there's anything wrong with him
 10   relying upon a declaration.
 11           Now, if he wants to testify to the jury on direct, I
 12   got a declaration from a Qualcomm engineer and the Qualcomm
 13   engineer says this, that's hearsay.  And that's not
 14   appropriate.  But if he relies upon it to -- to make it his own
 15   opinion -- and it is ultimately an opinion, is it not?
 16           MR. LOVE:  As to the rep -- whether -- whether one
 17   particular source code build is representative of another
 18   build, arguably, Your Honor, that is an expert opinion.
 19           THE COURT:  That that is an opinion, right?  So the
 20   question is whether it's an opinion with a proper basis.  I
 21   mean, that's one question.  The other question is whether it
 22   was timely --
 23           MR. LOVE:  Right.
 24           THE COURT:  -- timely provided.
 25           MR. LOVE:  And -- and in objecting to those
```

```
 1    declarations, part of our objection in -- not only was, you

 2    know, the hearsay problem, the after discovery problem, to the

 3    extent those -- I mean, what does the word "representative"

 4    mean?  What did the person who wrote that declaration mean when

 5    they said A is representative of B is something that has never

 6    been tested in the case.  And -- and that's among the many

 7    reasons why we wanted those declarations excluded, and they

 8    were.

 9         THE COURT:  They are.  And that hadn't changed.  And

10    if -- if anybody tries to offer those declarations, you've got

11    a ruling that will keep them out.

12         MR. LOVE:  Thank you, Your Honor.

13         THE COURT:  But I -- I don't know what else you are

14    seeking now, but anyway if -- I don't know.  Is there an

15    objection, a motion, a request, what?

16         MR. LOVE:  Your Honor, I simply -- our position was we

17    did not have an issue we -- we've sought a ruling from you on

18    today.  We simply expressed to -- to Core Wireless in

19    responding to this issue they raised that we expect for their

20    testimony to be consistent with -- with the Court's prior

21    rulings and with Rule 703.

22         THE COURT:  Okay.

23         MR. LOVE:  I appreciate your -- your guidance on that.

24         THE COURT:  All right.

25         MR. LOVE:  And I wanted to correct one -- one issue
```

relating to the sales data.  I went back and looked because I

have the spreadsheets.

My earlier statement, I don't believe any of those

models were on the initial production of sales data, which was

generated based on LG's view of what the accused products were

in the case.  It appears that in the update provided right

before the 911 trial, at least a couple of them, I haven't

checked all of them, were in that production.  And honestly,

standing here today, I'm not sure why that is because it was my

understanding that all of these have been produced from the

same list, and the list is those that we had agreed were the

accused products in the case.

So I certainly intend to confer with counsel, as you

suggested, but we -- regardless of what's in the data, I

believe the parties do have a dispute about what are the actual

accused products in the case.  And specifically with respect to

the reports of Mr. Jackson and Mr. Wesel, which list accused

products, none of these products are on their lists of accused

products.

So if those products are alleged to infringe the '850

and '536 patent, nothing in discovery has told us that.

Nothing in expert discovery has told us that.  So we don't

understand why those models could possibly be relevant to any

issue in this trial.

THE COURT:  And there may be some way that you should

1    raise that, but this is not the way.  The update on the

2    financials needs to be an update of what was provided before.

3    So whatever those models were, that's -- that's what you need

4    to update.  And if they're the wrong models or -- then figure

5    out what you need to do to address that, but I just -- the

6    order will be that you provide an update for the same models

7    that you provided in the last report.

8              MR. LOVE:  Understood, Your Honor.  Thank you.

9              THE COURT:  Okay.  Thank you.

10             Is there anything else that we need to take up?

11             MR. NOROOZI:  Yes, Your Honor.  There's one more item.

12             This item relates to some corrections to the report of

13   Dr. Wesel who is the expert on the '536 patent, and LG has

14   objected to the corrections as more than merely sort of

15   typographical and syntactical cleanup, and they've filed a

16   short motion to strike on this, a one, one and a half page

17   document in the -- in the past few days.  So I'd like to pass

18   up a copy of -- of the corrected report and -- and walk through

19   these items, if -- if Your Honor would allow us.

20             THE COURT:  I have in front of me here a copy of what

21   it says is the second corrected expert report of Dr. Wesel.

22             MR. NOROOZI:  Yes, Your Honor.  And just I can confirm

23   we have the same thing, is it 50 -- 56 pages long, dated August

24   24th at the end?

25             THE COURT:  Yes.

1          MR. NOROOZI:  Okay.

2          THE COURT:  And I guess -- I don't know what the

3    nature of the dispute is, but I think that clearly the -- the

4    Defendant is entitled to rely upon the original report.  You

5    can certainly offer that you have made these minor corrections,

6    but if they think they are corrections that have more than --

7    more effect than just a typographical error, then I see no

8    reason why they shouldn't be allowed to question the expert

9    with the earlier version -- I guess the October 23 version, as

10   well.

11         Are they contending that there is some substantive

12   effect to these changes?

13         MR. NOROOZI:  It's my understanding that they are,

14   Your Honor.  And so touching on your first point, we have no

15   problem with what you described, which is that they can sort of

16   point out to the expert that there were things that he had

17   errors as to or -- or typographical issues with or whatnot in

18   his previous report, as long as Dr. Wesel can explain that he's

19   made the corrections.

20         LG's position, however, appears to be that a number of

21   the corrections are more than merely typographical, and I'd

22   like to go through them and explain why that's not correct.

23         THE COURT:  Why don't you let them -- or maybe they've

24   already done this to you, but just identify the ones that --

25   that they believe are significant, and let's focus on those.

1          MR. NOROOZI:  I have that, Your Honor, in their motion

2   to strike that was filed, and so they point to -- they point to

3   Paragraphs 58, 85, 139, 172 through 174, and 181.

4          THE COURT:  All right.

5          MR. NOROOZI:  And so just taking them strictly in that

6   order, if I may, Your Honor?

7          THE COURT:  All right.

8          MR. NOROOZI:  Starting with Paragraph 58 of

9   Dr. Wesel's corrected report, and this is on Page 17.  Here,

10  you see in the first sentence of Paragraph 58 that he says:

11  Preparation of TCH/AHS frames.  And then in the second

12  statement he had mistakenly typed an FS, and these keys are

13  somewhat close together.  Anyway -- but so it's clear that he

14  was talking about AHS.  I -- I don't even think there is such a

15  thing as AFS, and so he's just fixed that.

16          And this is kind of illustrative of the kind of things

17  we're talking about.  I don't really understand how these are

18  substantive and not typographical.

19          THE COURT:  Well, why don't you let me hear from them

20  as to the nature of their objection, then I'll give you a

21  chance to respond.

22          MR. NOROOZI:  Yes, Your Honor.

23          THE COURT:  All right.

24          MR. MANN:  Your Honor, first of all, there were other

25  corrections, and some of them obviously were typographical, and

so we're -- we're not complaining about true typographical

changes.  But Paragraph 58 is a true material change.  There

is -- the HS is a half frame, the FS is a full frame, and that

has technological significance among the experts.

        And as -- when you read Paragraph 58, it's obvious --

I don't know why somebody -- if you were saying this is a

TCH/AHS, you would not say preparation of TH -- TCH/AHS frames

containing user information and then say the same thing again,

TCH/AHS -- I mean, you wouldn't say the same thing twice the

way they constructed that.

        This is a material change because it makes a

difference in how the signalling goes through the downlink, and

I'm not here to try to explain all the technology, except to

say that there is a difference of how information flows through

these frames, whether it's a half frame or a full frame.

        The importance of it is that, you know, during -- by

giving his reports and by us deposing him, he's taking a

specific position.  And then by changing this -- even though it

looks modest by the fact that it's just a one letter change --

it is a significant change in the technology that allows the --

the tower to connect with the receiver.

        And it makes -- it's a new opinion.  And it's a

different opinion than what he's been deposed on or what he's

written a report on.  So that's why Paragraph 58 is important

because it's not just a typographical correction.  It is a new

 1    opinion that -- for the first time shows up on August the 24th.

 2         THE COURT:  Well, whether it's a typographical

 3    correction or not is really a matter of who you believe.  I

 4    mean, it -- it may be a typographical correction, if he, in

 5    fact, made a typographical error.  But what I'm trying to

 6    understand, Mr. Mann, is how is this any different than if when

 7    he's on the stand, he says:  Oh, AHS is what I meant all along?

 8         MR. MANN:  Well, I -- that is one way to look at it,

 9    and that you could say, well, you just take care of this on

10    cross.

11         The problem with that is, Your Honor, we've proceeded

12    in this case for -- since his deposition, the last time in

13    January, that he takes the position that there's a difference

14    between AHS and AFS in this paragraph and in the rest of his

15    report.  And by allowing him to come back now and say, oh, I

16    really meant that this was a full frame instead of a half

17    frame, it makes a difference in the opinions that have been

18    expressed in the case.

19         And -- and it is basically a new opinion.  It's not

20    just a correction.  It's a new opinion that when you're talking

21    about this -- the source code and the use of the source code

22    and how the information flows through digitally from the tower

23    to the receiver, that it can be done in the same way whether

24    it's a half frame or a full frame, and that's -- that's --

25         THE COURT:  Well, at his deposition or anywhere else,

1  did he rely upon that being a full frame rather than a half

2  frame?

3          MR. MANN:  That's what his testimony was as -- as far

4  as I know because that's what his report showed.  When he

5  testified, he talked about the difference between half frames

6  and full frames.

7          THE COURT:  In the context of Paragraph 58?

8          MR. MANN:  Well, honest -- I didn't -- I don't have

9  his deposition in front of me, and so I don't want to make a

10 misrepresentation to the Court, except to say that our experts

11 have relied upon him saying that there's -- this -- the first

12 sentence he meant to say half frame and then the -- the second

13 part of the sentence -- I guess what I'm saying, Your Honor, is

14 it's not just a mistake.  There's no -- I mean, if he were

15 going to correct this sentence, then it makes logical sense in

16 constructing this sentence that he would just drop that

17 completely out.  You wouldn't say --

18         THE COURT:  Well, why not?  One refers to frames

19 containing user information, and the other is frames containing

20 messages.

21         MR. MANN:  Right.  And he was saying that the half

22 frames contain user information, and a full frame contains

23 messages beginning in the top level function.  Those are two

24 different things.  And now he's saying, well, I really meant

25 half frames contain both of them.  And so that's the difference

1    in the opinion.  It's a material change, not just a -- not just

2    a typographical error.  I mean, that's an important point in

3    the case.  And it's just a change of opinion.

4         THE COURT:  I think it's very difficult in a case like

5    this to say that the expert's not allowed to say that that was

6    a typographical error.  I think, frankly, that, you know -- I

7    understand their desire to get it out before trial because it's

8    harder for him to say it for the first time on the stand, but

9    have you got something -- you know, something that doesn't have

10   the appearance of a typographical error that has been changed

11   in here?

12        MR. MANN:  Well, of the -- of the six par -- you're

13   talking about the other paragraphs we complain about, Your

14   Honor, is that what you're asking?

15        THE COURT:  Yes, that is what I'm asking.

16        MR. MANN:  Yes.  If you look at Paragraph -- on Page

17   24, Paragraph 85, Your Honor.

18        In this situation, it's -- it's not just a

19   typographical change.  It's an addition.  As you know, in your

20   claims construction, you -- as I understand it, and, again, I

21   don't claim to be the claims construction expert, but there

22   are, as the Court interpreted, eight different states that

23   we're talking about, four -- four that there are good states

24   and bad states.  And in this paragraph for the first time, he

25   adds onset to indicate good state.

1      Now, that's -- that's an additional opinion.  That's

2  not just a typographical error.  He's adding a new state that

3  it -- that he says exists in this transfer of digital

4  information that all a sudden onset now becomes a good state.

5  He's never said that before that -- that I've seen, and it's a

6  new opinion that he's adding another state that he's never said

7  in the -- in his report before.  He didn't testify to it.  And

8  I don't think that's in claims construction.

9      And so we say that's not just a typographical error,

10 that's an addition in that paragraph.

11     THE COURT:  All right.

12     MR. MANN:  Your Honor, let's see, I think 43 -- on

13 Page 43 -- I'm not trying to speak for the Court, but I think

14 that's more in the line of -- I think more our issue here was

15 there is a change, but as I understand it, this paragraph would

16 be related to a claim that's been dropped.  I don't know that

17 our -- our position on Page 43 is -- that it's such a big deal

18 that "to" has been changed to "is," but this whole paragraph

19 staying in the report is not related to either one of the

20 claims in the patents.

21     MR. NOROOZI:  Should I address that now, Your Honor?

22     The issue here, I believe, if I may, is that our

23 expert cites back to his discussion of Claim 1 in the context

24 of Claim 19.  And, therefore, what he has here added to Claim 1

25 is still relevant to his opinions as to Claim 19.

1          THE COURT:  Okay.

2          MR. MANN:  And I think that's our complaint really is

3    that this would be related -- this paragraph would be related

4    to Claim 1 and not the claim that we're going forward with on

5    Claim 19 of '536 -- Patent '536.  In other words, you shouldn't

6    be able to testify as to expert testimony that would relate to

7    a different claim than what we were actually trying before the

8    Court.

9          THE COURT:  Well, as far as the issue that I

10   understand has been teed up on this motion, the question is

11   whether it's permissible to offer this sort of corrections,

12   and I haven't seen anything in here that looks to me like an

13   attempt to back door a supplemental opinion under the guise of

14   a correction.  Even the addition of the onset state when the

15   next paragraph or the chart, I guess, contained in that same

16   paragraph refers to the onset state and every other state

17   that's in that chart is addressed in his speech and that one --

18   in his -- I'm sorry, report, and that one is left out --

19         MR. MANN:  But I don't -- and as I understand it, Your

20   Honor, he's not -- he's not designating onset at that -- in

21   this chart as good or bad.

22         THE COURT:  Well, but his report is commenting on

23   every state that is covered in the chart as to whether it's a

24   good state or a bad state.  And he appears to have left out

25   onset?

1          MR. MANN:  He has, Your Honor, and this is the first

2    time he added it in and then testified that onset has the

3    designation of a good state.

4          THE COURT:  I certainly think that it's -- it's fair

5    to cross-examine him on that, but I -- I don't see this as,

6    like I said, a back door to get additional -- additional

7    opinions into the record.  And think you're free to

8    cross-examine him about this and whether this indicates that he

9    does sloppy work and should cast doubt on his other opinions,

10   but I -- I don't see anything out of the ordinary in terms of

11   use of a corrected report.

12         MR. MANN:  Your Honor, I -- I understand.

13         Can I ask one question, Your Honor?

14         THE COURT:  Yes.

15         MR. MANN:  And -- and I'm -- if you look at Paragraph

16   181, which is on Page 51, he's changed -- he's changed one

17   standard to another standard.  I guess my argument would be

18   we've -- we've been using one standard to understand his

19   position, and then by changing one number, of course, he's

20   changed -- changed the standard itself that he's using to

21   testify.

22         Now, is the Court including that as a

23   cross-examination point, as opposed to --

24         THE COURT:  Does -- are you telling me that -- that

25   there are two different standards?  The 45.003 is a different

1    standard from 45.009?

2             MR. MANN:  That's my understanding, Your Honor.

3             THE COURT:  Well, that is certainly a more significant

4    change than the others that I've seen.  Let me hear from the

5    Plaintiff on that.

6             MR. NOROOZI:  Yes, Your Honor.  This also really just

7    falls in the same category of the items that you described that

8    are fair game for cross-examination but that are true typo

9    corrects.  And the reason we know that is because Dr. Wesel's

10   report throughout makes use of both standard sections, 003 and

11   .009.  And so if you would take a look, for example, at

12   Paragraph 111 of his report, he says:  The standard document

13   3GPP TS 45.003 describes how the bit pattern is placed into a

14   transmission frame.  That's one instance.

15             In Paragraph 116, he, again, makes use of 45.003.  In

16   Paragraph 130, he makes use of it.  And I don't want to fill

17   the record with all these paragraph citations, but it's replete

18   throughout his report, and you can see that with a simple

19   control F search.

20             And so here in Paragraph 181, he inadvertently wrote

21   009 when he meant to write 003.  If they think that he's being

22   dishonest when he says that that was a typo, then they can

23   prove that up, but it's not like he's bringing in some

24   standards section that he never talked about in his report.

25             THE COURT:  Well, is that wherein language that

1    follows, is that a quote from a standard?  Or is that -- that's

2    claim language, is that the --

3              MR. NOROOZI:  Yes, I believe he's moving on to

4    elements of the claim there, and it's sort of just an orphan

5    heading.

6              THE COURT:  All right.  Is there any way that they

7    could have known from the text that that was a mistake?

8              MR. NOROOZI:  I believe so, Your Honor, because

9    there's detail here in this paragraph.  It says:  A signal

10   received by the accused devices is received in frames apparent

11   by the definitions of the frame structure in a standards

12   section.

13             And so 45.003 is where those definitions of the frame

14   structure exists.  I have no knowledge that there's that kind

15   of definition language in 45.009, and I have not heard that

16   argument.  And I believe they're different sections.  And --

17   and so if you're looking for definitions of frame structure,

18   you would know that we're talking about 45.003, especially with

19   the other citations in the report.

20             In addition, Your Honor, to the extent they were

21   confused about this issue or had doubts, they had the

22   deposition.  They didn't ask about this in his depo.

23             THE COURT:  Well, I understand, but it's -- I'm not

24   going to hold that against them.

25             Mr. Mann, do you have any response to the suggestion

1   that the definitions of the frame structure are in Section 003

2   and -- I mean -- yeah, in Section 003 and not Section 009?

3           MR. MANN:  Your Honor, could I have 30 -- 10 seconds?

4           THE COURT:  Yes.

5           MR. NOROOZI:  Your Honor, and could I point to a few

6   more sections of the report that support that proposition?

7           THE COURT:  Well, after he --

8           MR. NOROOZI:  Yes.

9           THE COURT:  -- responds.

10          MR. MANN:  Your Honor, I don't -- I don't have

11  anything to add because that's -- that's -- between Mr. Love

12  and myself, that's just not our area that we're presenting in

13  the trial, so I can't deny what Mr. Noroozi is saying.  So I

14  don't want to misstate anything to the Court, except to say

15  that obviously, the reason we didn't ask him about it in the

16  deposition on that section is because his report showed the

17  other standards, so...

18          THE COURT:  Well, based on the record that I have

19  before me, I believe that these are the sort of typographical

20  errors that it is appropriate to correct in this fashion.

21  And certainly, if you have further information to the

22  contrary, that's something you can use in cross-examining him

23  at trial.  But I'm -- I'm not going to strike the corrected

24  report.

25          MR. MANN:  Right, Your Honor, so as I understand it,

```
 1   then it just becomes -- as -- as you've stated, a

 2   cross-examination point where we can pull out the old report

 3   and compare them and, as you say, say this was sloppy work or

 4   whatever the questions may be.

 5           THE COURT:  Absolutely.

 6           MR. MANN:  Thank you, Your Honor.

 7           THE COURT:  All right.  Anything further?

 8           MR. NOROOZI:  Your Honor, just one item.  Going back

 9   to the exhibits that we discussed in the beginning and -- and

10   the issue of whether they were on our list, I just wanted to

11   add the point that although there was not a formal agreement

12   between both sides that that reservation clause is accepted,

13   there was also no formal disagreement as to that issue, meaning

14   that LG never told us, if you want something on the list, put

15   it on your list because we're not accepting this reservation

16   language.

17           And so the first time we've had an occasion to test

18   this proposition is now.  And it's -- it's -- it's a very heavy

19   penalty for us to not be able to make use of these documents

20   that are the inventor's deposition exhibits and that describe

21   his ideas and work.

22           THE COURT:  If they're really important to your side,

23   why in the world wouldn't you list them?

24           MR. NOROOZI:  Your Honor, I think that we -- I think

25   that in hindsight, absolutely the better course was to have
```

 1  listed them, and I don't disagree with that contention or

 2  notion.

 3       My -- my point here is that we did have a basis, in

 4  our opinion, for being able to use them --

 5       THE COURT:  You didn't see their list before you

 6  prepared yours.  You -- you prepared your list that had the

 7  exhibits that you thought were important.  They prepared their

 8  list, and you each included this catchall, but you could not

 9  have been relying on that catchall when you did your list

10  unless they gave you their list before you put together yours,

11  which would be highly unlikely.

12       But in any event, I understand what you're saying, and

13  it -- it may be a penalty in that sense, but it just makes it

14  hard for me to believe that it is a critical exhibit if you

15  didn't think it mattered enough to include it on your list.

16  And the system only works if we stick to the rules, and, I

17  mean, that's the rule.

18       MR. NOROOZI:  I understand, Your Honor.  And just as a

19  factual point, there were multiple iterations of both sides'

20  lists, and so it's true that it was not on our initial list.

21  It was on LG's list throughout, and -- and so that's the course

22  of events.  And -- but I -- I understand, Your Honor, and we

23  accept your point.

24       THE COURT:  All right.  Very well.  If that is all we

25  have, then I thank you, and we are adjourned.

1          LAW CLERK:  All rise.

2          (Hearing concluded.)

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                          CERTIFICATION

2

3          I HEREBY CERTIFY that the foregoing is a true and

4    correct transcript from the stenographic notes of the

5    proceedings in the above-entitled matter to the best of my

6    ability.

7

8

9     /S/ Shelly Holmes                        9/11/16
      SHELLY HOLMES, CSR-TCRR                   Date
10    OFFICIAL REPORTER
      State of Texas No.: 7804
11    Expiration Date: 12/31/16

12

13

14

15

16

17

18

19

20

21

22

23

24

25