# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | | |
|---|---|---|
| CORE WIRELESS LICENSING S.A.R.L., | § § | |
| *Plaintiff*, | § § | |
| v. | § § § | **CIVIL ACTION NO. 2:14-CV-00911-JRG** **LEAD CASE** |
| LG ELECTRONICS, INC., LG ELECTRONICS MOBILECOMM U.S.A., INC., | § § § § | **CIVIL ACTION NO. 2:14-CV-00912-JRG** **Consolidated member case** |
| *Defendants*. | § § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendants LG Electronics, Inc. and LG Electronics MobileComm U.S.A., Inc.'s (collectively, "LG" or "Defendants") Renewed Motion for Judgment as a Matter of Law, and for a New Trial, in the -912 Case (Invalidity) (No. 2:14-cv-911, Dkt. No. 616) ("the Motion"). Having considered the Motion, and for the reasons set forth below, the Court finds that the Motion should be and hereby is **DENIED**.

## I. BACKGROUND

On September 26, 2014, Core Wireless Licensing S.a.r.l. ("Plaintiff" or "Core") filed suit against LG, alleging infringement of, among others, United States Patent Nos. 6,633,536 ("the '536 Patent") and 7,804,850 ("the '850 Patent") (collectively, the "Asserted Patents"). Trial took place from September 12–16, 2016.

On November 2, 2016, the Court entered final judgment holding: (1) that LG infringed Claim 19 of the '536 Patent and Claim 21 of the '850 Patent; (2) that Claim 19 of the '536 Patent and Claim 21 of the '850 Patent were not invalid; (3) that Core be awarded $2,280,000 in damages;

(4) that LG's infringement was willful; and (5) that Core be awarded $456,000 as enhanced damages pursuant to LG's willful infringement. (No. 2:14-cv-912, Dkt. No. 47 at 3.)

## II. LEGAL STANDARD

### A. Renewed Motion for Judgment as a Matter of Law

"A motion for judgment as a matter of law [under Rule 50(b)] is a challenge to the legal sufficiency of the evidence supporting the jury's verdict." *Erfindergemeinschaft UroPep GbR v. Eli Lilly & Co.*, 276 F. Supp. 3d 629, 643 (E.D. Tex. 2017) ("*UroPep*") (Bryson, J., sitting by designation). Entry of judgment as a matter of law is therefore only appropriate when "there is no legally sufficient evidentiary basis for a reasonable jury to find as the jury did." *Guile v. United States*, 422 F.3d 221, 225 (5th Cir. 2005); *see also Baisden v. I'm Ready Prods., Inc.*, 693 F.3d 491, 498 (5th Cir. 2012) ("A district court *must* deny a motion for judgment as a matter of law unless the facts and inferences point so strongly and overwhelmingly in the movant's favor that reasonable jurors could not reach a contrary conclusion.") (emphasis added) (internal quotation marks omitted).[1]

"In evaluating a motion for judgment as a matter of law, a court must 'draw all reasonable inferences in the light most favorable to the verdict.'" *Metaswitch Networks Ltd. v. Genband US LLC*, No. 2:14-CV-00744-JRG, 2017 WL 3704760, at *2 (E.D. Tex. Aug. 28, 2017) (quoting *E.E.O.C. v. Boh Bros. Const. Co., L.L.C.*, 731 F.3d 444, 451 (5th Cir. 2013)). Courts must also avoid the temptation of revisiting credibility determinations or reweighing evidence. *Id.* Such determinations are, appropriately, left to the jury. *Montano v. Orange Cty., Texas*, 842 F.3d 865,

---

[1] *See also Finisar Corp. v. DirecTV Group, Inc.*, 523 F.3d 1323, 1332 (Fed. Cir. 2008) ("The grant or denial of a motion for judgment as a matter of law is a procedural issue not unique to patent law, reviewed under the law of the regional circuit in which the appeal from the district court would usually lie.").

874 (5th Cir. 2016) ("[I]t is for the jury alone to judge the credibility of witnesses and weigh the evidence.").

### B. Motion for New Trial

Rule 59 provides that a new trial may be granted on all or part of the issues on which there has been a trial by jury for "any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a). Notwithstanding the broad sweep of Rule 59, "courts do not grant new trials unless it is reasonably clear that prejudicial error has crept into the record or that substantial justice has not been done, and the burden of showing harmful error rests on the party seeking the new trial." *Metaswitch*, No. 2:14-cv-00744-JRG, 2017 WL 3704760, at *2; *UroPep*, 276 F. Supp. 3d at 643. "A new trial may be granted, for example, if the district court finds the verdict is against the weight of the evidence, the damages awarded are excessive, the trial was unfair, or prejudicial error was committed in its course." *Smith v. Transworld Drilling Co.*, 773 F.2d 610, 612–13 (5th Cir. 1985); *see also Laxton v. Gap Inc.*, 333 F.3d 572, 586 (5th Cir. 2003) ("A new trial is warranted if the evidence is against the great, and not merely the greater, weight of the evidence.").[2]

### C. Enablement and Written Description

"The specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same." 35 U.S.C. § 112(a). The Federal Circuit has consistently held that this statute sets forth two separate and distinct requirements, known as "enablement" and "written description." *Ariad Pharms., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1351 (Fed. Cir. 2010).

---

[2] *See also Z4 Techs., Inc. v. Microsoft Corp.*, 507 F.3d 1340, 1347 (Fed. Cir. 2007) (holding that regional circuit law controls the decision to grant a new trial under Rule 50(b) and Rule 59).

Although distinct, the doctrines of written description and enablement are related and "often rise and fall together." *Id.* at 1352. Both issues are routinely tried to a jury. *See, e.g.*, *Enzo Biochem, Inc. v. Applera Corp.*, 780 F.3d 1149, 1153 (Fed. Cir. 2015) ("The case then proceeded to a jury trial, where the jury found that the… patent was not invalid for lack of written description and enablement.")

To prove that a claim is invalid for lack of enablement, a challenger must show by clear and convincing evidence that a person of ordinary skill in the art would not be able to practice the claimed invention without "undue experimentation." *Allergan, Inc. v. Sandoz Inc.*, 796 F.3d 1293, 1309 (Fed. Cir. 2015) (citing *In re Wands*, 858 F.2d 731, 736–37 (Fed. Cir. 1988)). "A claim is sufficiently enabled even if 'a considerable amount of experimentation' is necessary, so long as the experimentation 'is merely routine, or if the specification in question provides a reasonable amount of guidance with respect to the direction in which the experimentation should proceed.'" *Vasudevan Software, Inc. v. MicroStrategy, Inc.*, 782 F.3d 671, 684 (Fed. Cir. 2015) (quoting *In re Wands*, 858 F.2d at 737).

Although "an inoperable invention is not enabled … the party asserting inoperability must show that all disclosed alternatives are inoperative." *CFMT, Inc. v. YieldUp Int'l Corp.*, 349 F.3d 1333, 1339 (Fed. Cir. 2003) (emphasis added); *see also Emi Grp. North Am. v. Cypress Semiconductor Corp.*, 268 F.3d 1342, 1348–49 (Fed. Cir. 2001) ("A claimed invention having an inoperable or impossible claim limitation may lack utility under 35 U.S.C. § 101 and certainly lacks an enabling disclosure under 35 U.S.C. § 112.… [but even] if some of the claimed combinations were inoperative, the claims are not necessarily invalid … the party alleging inoperability must show that each disclosed embodiment in the patents was impossible or not enabled."); *Newman v. Quigg*, 877 F.2d 1575, 1582 (Fed. Cir. 1989) (claims to a perpetual motion

machine were invalid because the specification did not enable any embodiment). Whether a claim satisfies the enablement requirement of 35 U.S.C. § 112 is a question of law reviewed without deference, although the determination may be based on underlying factual findings, which are reviewed for clear error. *Alcon Research Ltd. v. Barr Labs., Inc.*, 745 F.3d 1180, 1188 (Fed. Cir. 2014). The party asserting non-enablement bears the burden of proof by clear and convincing evidence. *See id.* at 1189–90.

"The test for the sufficiency of the written description 'is whether the disclosure of the application relied upon reasonably conveys to those skilled in the art that the inventor had possession of the claimed subject matter as of the filing date.'" *Vasudevan Software*, 782 F.3d at 682 (quoting *Ariad*, 598 F.3d at 1351). "[T]he test requires an objective inquiry into the four corners of the specification from the perspective of a person of ordinary skill in the art. Based on that inquiry, the specification must describe an invention understandable to that skilled artisan and show that the inventor actually invented the invention claimed." *Ariad*, 598 F.3d at 1351. Whether a patent complies with the written description requirement is a question of fact. Id. "A party must prove invalidity for lack of written description by clear and convincing evidence." *Vasudevan Software*, 782 F.3d at 682.

### D. Anticipation and Obviousness

"Anticipation" in patent terms means that the claimed invention is not new; that is, the invention as claimed was already known. Anticipation is a question of fact, and a finding of anticipation requires that every limitation of the claim is present in a single prior art reference. *See, e.g.*, *Blue Calypso, LLC v. Groupon, Inc.*, 815 F.3d 1331, 1341 (Fed. Cir. 2016); *In re Gleave*, 560 F.3d 1331, 1334 (Fed. Cir. 2009).

"Obviousness" is a matter of law based on underlying factual findings, and is grounds for unpatentability when the claimed subject matter is not identically described, if the subject matter

5

as a whole would have been obvious to a person having ordinary skill in the field of the invention. 35 U.S.C. § 103(a); *see also KSR Int'l, Inc. v. Teleflex, Inc.*, 550 U.S. 398, 406-07 (2007). When obviousness is based on information from a combination of sources, the question is whether a person of ordinary skill in the field would have been motivated to select and combine this information, and with a reasonable expectation of achieving the desired result. *See, e.g.*, *Merck & Cie v. Gnosis S.p.A.*, 808 F.3d 829, 833 (Fed. Cir. 2015).

## III. DISCUSSION

### A. Claim 21 of the '850 Patent

Claim 21 of the '850 Patent recites:

> 21. [A] An apparatus comprising:
>
> [B1] a memory adapted to store computer program instructions and [B2] a virtual transmission time interval;
>
> [C] a wireless transceiver;
>
> [D] a processor adapted to:
>
> > [E] check to determine whether the apparatus is transmitting data packets in a current air interface transmission time interval; and
> >
> > [F1] for the case where it is determined that the apparatus is not transmitting in the current air interface transmission time interval, [F2] to cause the transmitter to transmit a next data packet after a predetermined period associated with the virtual transmission time interval has elapsed, [G] wherein the next data packet comprises at least one protocol data unit and [H] the virtual transmission time interval is an integer multiple of the current air interface transmission time interval.

'850 Patent at 13:40–56.

#### 1. Enablement

LG reiterates the exact arguments that it made in its Motion for Summary Judgment (Dkt. No. 276), to wit: Claim 21 of the '850 Patent is not enabled because when the claimed integer in claim element H is equal to a negative number or zero, the claimed "virtual transmission time

interval" becomes a negative time interval or zero time interval, amounting to being able to stop or reverse time, while when the claimed integer is "very large," the claimed invention "would result in delays that would interfere with the operation of the overall system" and "effectively tells the phone it can never transmit." (Dkt. No. 616. at 4.) LG asserts that it's expert, Mr. Lanning, presented evidence to this effect, and that Core's expert did not rebut it. (*Id.* (citing 9/15/16 Morning Session, Dkt. No. 43 at 6:15–8:2; 9/15/16 Afternoon Session, Dkt. No. 44 at 42:13–69:15).)

Core responds that it is not required to show that non-operable embodiments are enabled, and that LG's expert, Mr. Lanning, agreed that "one of ordinary skill would know, without undue experimentation, 'that time cannot move backwards,' that 'time cannot stand still,' and that using large integers 'would not make any sense either' as 'the cell phone would never transmit.'" (Dkt. No. 624 at 1 (citing 9/15/16 Morning Session, Dkt. No. 43 at 8:6–24).)

As previously noted by the Court:

> The relevant enablement question is whether "undue experimentation" is required to identify and practice the operative embodiments. *See Atlas*, 750 F.2d at 1576; *Allergan*, 796 F.3d at 1309. LG's Motion does not present evidence or argument that any experimentation is necessary to practice claim 21 in light of the specification. LG's only mention of experimentation is contained in the statement "[t]he specification does not teach a person of ordinary skill in the art how to make or use an inoperable embodiment, and no amount of experimentation could remedy this problem." (Dkt. No. 276 at 6). This is not the test for enablement. If it was, any claim that encompasses an inoperative embodiment—*e.g.* a claim that fails to remind the user to plug in the computer—would automatically be invalid.

(Dkt. No. 532 at 10.)

The situation has not changed. LG presented no evidence at trial that undue experimentation would be needed to determine that negative, zero, and very large integer values would render the embodiment inoperable. While LG asserts that "[i]t is undisputed that when the integer is negative or zero, the invention would require time to run backwards or stand still-

7

something that the '850 patent specification does not enable a person of ordinary skill (or anyone, for that matter) to do without considerable experimentation," the Court finds that the jury likely understood that a person of ordinary skill would not experiment in time travel. Further, while Mr. Lanning testified that "there's a lot of experimentation that would be required to figure out how large [an integer] is too large," (Dkt. No. 43 at 9:18–19,) the question is not whether there is some, or even a large amount, of experimentation, but whether such experimentation was "undue." *See Atlas Powder Co. v. E.I. du Pont De Nemours & Co.*, 750 F.2d 1569, 1576 (Fed. Cir. 1984) ("That some experimentation is necessary does not preclude enablement; the amount of experimentation, however, must not be unduly extensive."); *Allergan*, 796 F.3d 1293, 1309 (Fed. Cir. 2015) (To prove that a claim is invalid for lack of enablement, a challenger must show by clear and convincing evidence that a person of ordinary skill in the art would not be able to practice the claimed invention without "undue experimentation.").

Accordingly, and consistent with the Court's prior Order adopting Magistrate Judge Payne's Report and Recommendation on Summary Judgment of Invalidity (Dkt. No. 532), the Court finds that there is sufficient evidence for a reasonable jury to find LG did not prove by clear and convincing evidence that Claim 21 of the '850 Patent was not enabled and the Court **DENIES** the Motion as to such argument.

  2. Written Description

LG argues that "[f]or similar reasons [to its enablement argument], LG is also entitled to judgment as a matter of law that claim 21 is invalid for lack of written description under 35 U.S.C. § 112, ¶ 1," because "[i]t is undisputed that the inventor did not have in mind as his invention an 'integer multiple' where the integer is negative or zero," "it is undisputed that the inventor did not have in his mind as his invention an 'integer' equal to one," and "[i]t is further undisputed that the

8

inventor did not have in mind as his invention a very large 'integer' resulting in an almost infinite delay." (Dkt. No. 616 at 7.).

Core responds that Magistrate Judge Payne's Report and Recommendation on Summary Judgment of Invalidity addressed this issue prior to trial and that "ordinary artisans would recognize [the allegedly inoperable scope] to be inoperable and have no reason to further pursue." (Dkt. No. 624 (citing Dkt. No. 532 at 13; 9/15/16 Morning Session, Dkt. No. 43 at 63:1–64:17).) Core notes that, at trial, LG's expert, Mr. Lanning, testified:

> Q. And so if you applied a negative number to that and said we have to wait for the VTTI to elapse, and that's minus, a negative number, that would mean time would be going backwards, right?
>
> A. Yes.
>
> Q. Now, is it your testimony that one of skill in the art would not -- would not know that time cannot move backwards without undue experimentation?
>
> A. No.
>
> Q. And one of skill in the art would know that time cannot stand still without undue experimentation, right?
>
> A. That's correct.

(9/15/16 Morning Session, Dkt. No. 43 at 63:4–15.) Mr. Lanning further testified that he had not investigated any integers above 4. (*Id.* at 64:4–12 ("Q. (By Mr. Fenster) You agree that one of skill in the art would be able to practice the '850 patent, Claim 21, with a VTTI of 2, correct? A. Yes. Q. Or 10? A. I don't know that, no. Q. 5? A. I know 4 because 4 -- that's the highest number I could go because that's used in the examples of the patent.").)

"A patent must be precise enough to afford clear notice of what is claimed, thereby 'apprising the public of what is still open to them.'" *Nautilus, Inc. v. Biosig Instruments, Inc.*, 134 S. Ct. 2120, 2129 (2014) (quoting *Markman v. Westview Instruments*, 517 U.S. 370, 373 (1996)). "One must bear in mind, moreover, that patents are 'not addressed to lawyers, or even to the public

9

generally,' but rather to those skilled in the relevant art." *Id.* (quoting *Carnegie Steel Co. v. Cambria Iron Co.*, 185 U. S. 403, 437 (1902)).

Here, LG's expert, Mr. Lanning, testified that one of ordinary skill would know that time cannot flow backwards or stop. (9/15/16 Morning Session, Dkt. No. 43 at 63:4–15.) Mr. Lanning further testified that he had not investigated any numbers above 4. (*Id.* at 64:4–12.) The Court finds that there was adequate evidence for a reasonable jury to find that one skilled in art would understand that Claim 21 did not claim time travel; further, as Mr. Lanning did not investigate integers over 4, there is no evidence that large integers are not adequately described, even if such numbers were not ideal. *See Alcon Research*, 745 F.3d at 1191 ("[W]ritten description is about whether the skilled reader of the patent disclosure can recognize that what was claimed corresponds to what was described; it is not about whether the patentee has proven to the skilled reader that the invention works, or how to make it work, which is an enablement issue."). Accordingly, the Court finds that there is sufficient evidence for a reasonable jury to find LG did not prove by clear and convincing evidence that Claim 21 of the '850 Patent was not adequately described under § 112, ¶ 1 and the Court **DENIES** the Motion as to such argument.

   3. <u>Anticipation</u>

LG argues that Claim 21 of the '850 Patent is invalid as anticipated by "admitted prior art." (Dkt. No. 616 at 9.) Alternatively, LG argues that a new trial is warranted because the Court erroneously struck Mr. Lanning's expert opinion that the '850 Patent anticipated itself. (*Id.* at 9–12.)

Core responds that LG failed to show that "any single prior art reference disclose[d] each and every limitation of the claimed invention." (Dkt. No. 624 at 6 (quoting Dkt. No. 616 at 8–9).)

LG replies that "Claim 21 is anticipated when the 'integer multiple' is 1, as admitted by the inventor and the '850 patent itself." (Dkt. No. 629 at 2.) "Core's only response is based on the

10

false premise that LG did not point to a *single* prior art reference, and instead 'LG sought to argue anticipation based on 'the admitted prior art,' *i.e.*, all or any of the multiple references discussed in the summary of the invention section of the '850 patent.' To the contrary, LG's expert made clear that his opinion based on 'admitted prior art' was limited to admissions found in the '850 patent itself, a single reference." (*Id.* at 2–3 (quoting Dkt. No. 624 at 6–7).)

Under 35 U.S.C. § 102(a), "A person shall be entitled to a patent unless: (1) the claimed invention was patented, described in a printed publication, or in public use, on sale, or otherwise available to the public before the effective filing date of the claimed invention; or (2) the claimed invention was described in a patent issued under section 151, or in an application for patent published or deemed published under section 122(b), in which the patent or application, as the case may be, names another inventor and was effectively filed before the effective filing date of the claimed invention." It is axiomatic that a patent cannot be filed before itself; accordingly, the '850 Patent cannot anticipate itself. The Court further finds that it did not commit error in striking this section of Mr. Lanning's expert report and removing the issue from the jury and the Court **DENIES** the Motion as to such argument.

4. Obviousness

LG argues that Mr. Lanning testified that Claim 21 of the '850 Patent is obvious in light of the Samsung and Willars references. (Dkt. No. 616 at 12 (citing LGX-607; LGX-608, 9/15/16 Morning Session, Dkt. No. 43 at 14:18–21:24).) LG asserts that Mr. Lanning testified that Samsung in light of Willars "discloses or renders obvious each of the limitations of claim 21 of the '850 Patent," including that Samsung discloses the "virtual transmission time interval," (*Id.* at 12–13 (citing 9/15/16 Morning Session, Dkt. No. 43 at 14:18–15:6),) that the Willars reference discloses the "check to determine step," (*Id.* at 13 (citing 9/15/16 Morning Session, Dkt. No. 43 at 15:7–22),) and that "it would have been obvious to combine Samsung with Willars, as those

11

references would have been known to a person of ordinary skill because, for example, they both involve the same technology and relate to the same type of cellular network." (*Id.* (citing 9/15/16 Morning Session, Dkt. No. 43 at 14:11–15:22, 16:2–23).)

Core responds that Mr. Lanning's "check to determine" analysis was "stated in conclusory fashion" and failed to show "how Willars purportedly teaches that limitation." (Dkt. No. 624 at 7. (citing 9/15/16 Morning Session, Dkt. No. 43 at 16:19–23).) "Moreover, Mr. Lanning further failed to give any testimony as to why one of ordinary skill would have been motivated to combine Samsung and Willars with an expectation of success, other than for purposes of a hindsight-based invalidity theory." (*Id.* at 8.)

At trial, it was LG's burden to prove that Claim 21 of the '850 Patent was invalid by clear and convincing evidence. Mr. Lanning's full discussion of the Willars Patent was:

> Q. What about the Willars patent?
>
> A. The Willars patent is a patent that's assigned to Ericsson. They're a very large cell phone equipment provider, if you're not familiar with the company. The Willars patent describes how the mobile phone -- how the cell phone, it can go to sleep at times when it doesn't need to receive information or send information to the base station.
>
> And what's shown by this figure from the Willars patent, it's actually an issued patent. The highlighted boxes or the highlighted sections in yellow are where the cell phone would wake up, listen to the base station, and then also send if it needed to send.
>
> And so this patent's describing this discontinuous transmission, discontinuous reception where the cell phone doesn't need to stay on and listen all the time nor does it need to try to send all the time.

(9/15/16 Morning Session, Dkt. No. 43 at 15:7–22.) The Court notes that at no time in this analysis did Mr. Lanning use the phrase "check to determine" or compare the Willars Patent to the language of Claim 21 of the '850 Patent. Accordingly, when Mr. Lanning later stated that the "check to

determine" claim element was met, a reasonable jury could have discounted his otherwise conclusory statement.

Further, Mr. Lanning's testimony that a person of skill in the art would combine the Samsung and Willars references is limited to "both of these are patents that relate to the same type of cellular network. They're both in the same technology area. One's from Samsung, which is a large supplier of cellular equipment. The other is Ericsson. That's a supplier of cellular equipment as well. So the engineers -- a person of ordinary skill in the art would be aware of these references and be motivated to combine these two together." (*Id.* at 16:3–10.) Such conclusory analysis is insufficient for the Court to determine that no reasonable jury could have found to the contrary or determined that Mr. Lanning was not credible, especially in light of Mr. Lanning's earlier comments that cellular equipment engineers would need extensive experimentation to determine that cell phones could not travel through time. (*Id.* at 8:11–14 ("If you think about it, if that n equals minus, you're asking the cell phone to go back in time. So that's a very difficult thing to do.").)

Accordingly, the Court finds that a reasonable jury could have found that LG did not prove by clear and convincing evidence that Samsung and Willars rendered Claim 21 of the '850 Patent obvious and the Court **DENIES** the Motion as to such argument.

5. Ineligible Subject Matter

LG argues that Claim 21 "is drawn to unpatentable subject matter," despite the Court previously denying "LG's motion for summary judgment that claim 21 is invalid under 35 U.S.C. § 101." (Dkt. No. 616 at 14.) While "§ 101 was not raised before the jury, . . . LG nonetheless maintains that as a matter of law claim 21 of the '850 patent is invalid under 35 U.S.C. § 101 for the reasons stated in its motion for summary judgment." (*Id.*)

The Court finds that LG has presented nothing but conclusory attorney argument, and that what they did present was the same as previously urged and denied at the summary judgment level. Accordingly, the Court **DENIES** the Motion as to whether Claim 21 is directed to ineligible subject matter.

### B. Claim 19 of the '536 Patent

Claim 19 of the '536 Patent recites:

> 19. A receiver for receiving information and messages in a digital telecommunications system, the receiver comprising:
>
>> [a] receiving means for receiving a signal via a transmission channel in frames wherein each frame has one of two states, the states being a good state and a bad state;
>>
>> [b] a user information decoder operationally coupled to the receiving means for generating decoded user information, and replacing means for replacing a bad frame at least partly with a preceding good frame;
>>
>> [c] a message decoder operationally coupled to the receiving means for decoding the messages, wherein for each different message, a corresponding unique bit pattern has been defined, wherein [d1] the receiver is adapted to detect a frame which contains a message and that the detecting is based only on identifying a bad frame [d2] which additionally contains a bit pattern which deviates from a bit pattern corresponding to a message at most by a *predetermined threshold value*.

'536 Patent at 13:46–14:14 (emphasis added).

#### 1. Anticipation and Obviousness

LG argues that the IS-54 reference "anticipates (or at least renders obvious) each limitation of claim 19." (Dkt. No. 616 at 16.) LG asserts that Dr. Fuja testified that "'every cell phone since 1991 practices [claim elements] (a), (b), and (c), including IS-54.' The only purported point of novelty for claim 19 is the two-step method at the end of the claim for detecting a stolen frame (i.e., a frame containing a message)." (Dkt. No. 616 at 15 (quoting 9/14/16 Afternoon Session, Dkt. No. 42 at 131:7–8).) LG asserts that the last claim element is met because the IS-54 reference

14

teaches that "a frame can be intentionally marked 'bad' in which case the receiver will look inside the frame to see if it contains a message." (*Id.* at 16 (citing 9/14/16 Afternoon Session, Dkt. No. 42 at 53:15–54:11, 75:8–76:10).)

Core responds that there is no testimony that the IS-54 reference "discloses the 'pre-determined threshold' limitation of Claim 19. Accordingly, there was no evidence from which a jury could find that IS-54 anticipates." (Dkt. No. 624 at 9 (citing 9/14/16 Afternoon Session, Dkt. No. 42 at 127:16–18; 133:4–6).) Core further responded that "Dr. Fuja provided no testimony as to how or why Claim 19 would have been obvious over IS-54 alone, given at least the predetermined threshold element. Rather, Dr. Fuja made a purely conclusory assertion, which does not suffice." (*Id.* (citing 9/14/16 Afternoon Session, Dkt. No. 42 at 127:16–18; 133:4–6).)

Dr. Fuja testified that the second step of claim element [d2] stated "which additionally contains a bit pattern which deviates from a bit pattern corresponding to a message at most by a pre-determined threshold value." (9/14/16 Afternoon Session, Dkt. No. 42 at 76:3–5.) On cross examination, Dr. Fuja testified that he had not discussed "a pre-determined threshold value" (9/14/16 Afternoon Session, Dkt. No. 42 at 127:16–18 ("Q. Okay. I may have missed it, Dr. Fuja, but did you testify about a pre-determined threshold value on direct? A. I don't recall that I did, no.").) On re-cross, Dr. Fuja reiterated that he was not asked about the pre-defined threshold. (9/14/16 Afternoon Session, Dkt. No. 42 at 127:16–18 ("Q. On redirect, you still were not asked about pre-defined threshold, correct? A. That is correct.").) In light of Dr. Fuja's admissions that he did not discuss a claim element, the Court finds that a reasonable jury could have found that LG failed to prove that the IS-54 reference anticipated Claim 19 of the '536 Patent and the Court **DENIES** the Motion as to such issue.

2. Obviousness

LG argues that the Claim 19 is obvious in light of the combination of the IS-54 and Brolin references, as well as by the combination of the IS-54 and Davis references. (Dkt. No. 616 at 16–17, 17.) LG's only argument as to the Brolin reference is that "Brolin teaches using a unique signature to distinguish between one of three transmission modes. One of ordinary skill in the art would have been motivated to combine the method of distinguishing between different transmission modes taught in Brolin with the IS-54 frame stealing solution to address the common problem of transmitting different types of data over the same line." (*Id.* at 16–17.) LG's only argument as to Davis is that it "teaches switching between data and speech modes using a parity failed signal coupled with codewords for each of the two modes. One of ordinary skill in the art would have been motivated to combine the method of distinguishing between data and speech modes taught in Davis with the IS-54 frame stealing solution to address the common problem of transmitting different types of data over the same line." (*Id.* at 17.)

The Court finds, as Dr. Fuja admitted, that he never testified as to the "pre-determined threshold value claim," and accordingly, a reasonable jury could find that LG had not presented clear and convincing evidence that all of the elements of Claim 19 of the '536 Patent were found in the prior art, either alone or in combination. Accordingly, the Court **DENIES** the Motion as to such issue.

IV. CONCLUSION

For the reasons stated above, the Court **DENIES** the Motion in its entirety.

**So ORDERED and SIGNED this 25th day of September, 2018.**